1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SILVER FERN CHEMICAL, INC., a Washington corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>SCOTT LYONS, an individual, TROY KINTO, an individual, KING HOLMES, an individual, ROWLAND MORGAN, an individual, and AMBYTH CHEMICAL COMPANY, a Washington corporation,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Silver Fern Chemical, Inc. ("Silver Fern"), by and through its undersigned

counsel, files this Complaint against Defendants Scott Lyons ("Lyons"), Troy Kinto ("Kinto"),

King Holmes ("Holmes"), Rowland Morgan ("Morgan"), and Ambyth Chemical Company

("Ambyth," and, collectively with Lyons, Kinto, Holmes, and Morgan, "Defendants") and

alleges the following.

**NATURE OF THE ACTION**

1.      Scott Lyons, Troy Kinto, and King Holmes are all former employees and

salespeople of Plaintiff Silver Fern Chemical, Inc., a chemical distribution company based in

COMPLAINT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Seattle. Though Silver Fern paid them hundreds of thousands of dollars annually (most of it in commissions), Lyons, Kinto, and Holmes were all unhappy with their compensation. Specifically, each complained about charges against their compensation at Silver Fern, as well as Silver Fern's expectations regarding the extension of customer credit, carrying inventory, risk management, and other requirements regarding their sales. Collectively, they all resigned from Silver Fern on the same day: April 14, 2023. As part of their resignations, all three announced that they were joining Defendant Ambyth Chemical Company—a much smaller supplier, customer, and competitor of Silver Fern—as "Senior Partners" in Sales and Marketing.

2.     Their resignation emails omitted the truth of the conspiracy in which they had been engaged for months: to steal Silver Fern's trade secret customer and vendor information (including by accessing its computers and customer, vendor, product, and financial information while the office was closed), , to use their wrongfully-gained information to compete with their former employer for their own economic benefit, and to attempt to cover up their actions by "permanently" deleting thousands of emails and at least one Teams message.

3.     Both before and after they left their employment with Silver Fern, all three unlawfully and without authorization (1) breached their duties of loyalty and confidentiality to Silver Fern, (2) accessed and retained Silver Fern's trades secrets (3) deleted confidential and proprietary information from Silver Fern's computer systems, and (4) appropriated Silver Fern's business relationships and opportunities for their own gain.

4.     Defendants Lyons, Kinto, and Holmes engaged in this conduct not only for their own benefit, but in concert and as part of a conspiracy with Defendants Morgan and Ambyth.

5.     Last year, Silver Fern had over ███████ in revenue. Of that ███████, over ███ came from its existing customer relationships that Defendants Lyons, Kinto, and Holmes

COMPLAINT - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

managed. These customer relationships were generated through Silver Fern's significant, confidential, and proprietary investment in customer acquisition.

6.      Since their departure from Silver Fern, Defendants Lyons, Kinto, and Holmes each have—in violation of the confidentiality agreements they signed with Silver Fern and in violation of Washington and federal law—appropriated Silver Fern's confidential and trade secret information for their own benefit, and for the benefit of Defendants Morgan and Ambyth.

7.      Defendants Morgan and Ambyth, in turn, have interfered with Silver Fern's contractual relationships—both with Defendants Lyons, Kinto, and Holmes, on the one hand, and Silver Fern's customers and vendors, on the other—for their own benefit.

8.      Silver Fern Chemical brings this Complaint to enjoin Defendants' unlawful use of Silver Fern's confidential and trade secret information, as well as to recover its damages, including double damages, attorneys' fees, and costs.

## THE PARTIES

9.      Plaintiff Silver Fern Chemical, Inc. is a Washington corporation with its principal place of business in Seattle, Washington.

10.     Defendant Scott Lyons is a citizen and resident of the State of Montana.

11.     Defendant Troy Kinto is a citizen and resident of the State of Texas.

12.     Defendant King Holmes is a citizen and resident of the State of Washington.

13.     Defendant Rowland Morgan is a citizen and resident of the State of Washington.

14.     Defendant Ambyth Chemical Company is a Washington corporation with its principal place of business in Seattle, Washington.

COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## JURISDICTION AND VENUE

2          15.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because

3    Plaintiff states a cause of action arising under the laws of the United States, namely, the

4    Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Defend Trade Secrets Act, 18 U.S.C.

5    § 1836. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28

6    U.S.C. § 1367(c) because Plaintiff's state law claims are so related to claims in this action within

7    the Court's original jurisdiction that they form part of the same case or controversy.

8          16.     This Court has personal and general jurisdiction over Defendants Holmes and

9    Morgan because they reside in this District. This Court has personal and general jurisdiction over

10   Defendant Ambyth because Defendant Ambyth's principal place of business is located in this

11   District, and Defendant conducts substantial business in Washington and this District through its

12   principal place of business.

13         17.     This Court has personal jurisdiction over Defendants Lyons and Kinto because

14   their tortious conduct was committed in or directed to this District, or both.

15         18.     Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391

16   because Defendant Ambyth is headquartered in this District and a substantial part of the events

17   or omissions giving rise to Plaintiff's claims occurred in this District.

18                                ## FACTUAL ALLEGATIONS

19   A.    **Silver Fern Chemical, Inc. is a significant player in chemical distribution.**

20         19.     Silver Fern was founded in 2004 by just two individuals: Lisa and Sam King. In

21   the nearly twenty years since, it has grown to be a significant player in chemical distribution,

22   serving such industries as agriculture; food and pharmaceuticals; household and industrial

23   cleaning; oil, gas, and mining; specialty chemical manufacture; water treatment; and more. Its

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

hundreds of customers include household names like Sherwin Williams, PPG, Michelin, and SC Johnson, as well as less well-known manufacturers nationwide and internationally. Silver Fern distributes chemicals throughout the United States, Canada, the United Kingdom, Ireland, Korea, China, Australia, Mexico, and Taiwan.

20.     When Silver Fern began, it had only one employee: Sam King. Over the next few years, Silver Fern worked up to four or five employees. Every one of those employees helped to run nearly every aspect of the business, from taking and processing purchase orders, arranging for delivery of its products, and preparing invoices to going to the bank to deposit checks.

21.     Over time, and with the dedicated work of its principals, Silver Fern grew to support hundreds of businesses. Last year, it generated over ███████ in revenue.

22.     But chemical distribution is no ordinary business that can be started by individuals with no know-how. Fulfilling orders for highly-specialized chemicals is a complex, costly, regulated, and risk-intensive endeavor. While Silver Fern's customers are, in some cases, household names, the chemicals used by Silver Fern's customers are most often not: Silver Fern distributes hundreds of chemicals ranging from Aminoethylpiperazine (AEP) to Tripropyleneglycol Diacrylate and Alpha Amylase.

**B.      Silver Fern's customer relationships.**

23.     Indeed, success in the chemical distribution business is based not merely on the ability to identify the right customers, but also intimate familiarity with the details of those customers' needs, and hard-won trust and confidence based in experience over time.

24.     Silver Fern spent years and millions of dollars over the course of its existence building such relationships and its brand. Relationships are capital in this highly-specialized industry.

COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

25.     In many cases, a customer relationship begins with an online customer product inquiry, or "active prospect"—contact from a potential customer that can lead to a profitable customer-to-business relationship. Silver Fern's online customer product inquiry generation system took years of time, money, and energy to develop, and involves a complex process of driving potential customers to Silver Fern's website, including through sophisticated website design, organic search engine optimization, and online advertising, all of which required immense investments of time and money. In addition, in the last decade alone, Silver Fern has paid nearly $2 million in costs associated with advertising, dues and subscriptions, travel, and participation in trade shows, which were all designed to drive active prospects to Silver Fern. Over the years, Silver Fern has marketed for and received thousands of active prospects, many of which it has been able to convert into ongoing customer relationships through the time (and compensation) of its sales team. Indeed, in the last ten years, Silver Fern paid Defendants Lyons, Kinto, and Holmes a combined $8.7 million in salaries and profit sharing alone.

26.     ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

27.     This is especially true as the supply chain has become more complicated during and after the COVID-19 pandemic. For its imported products, Silver Fern had to plan and order products before its customers needed them—and had to pay to ship and store those products. The data needed to meet the just-in-time supply and demand chain for its customers and to maintain a

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

competitive pricing edge is collected, stored, analyzed, and maintained by Silver Fern at its expense. Silver Fern's data is such a central part of its overall business operations that its employees depend on daily reports generated by its accounting and customer service departments to meet customer demands.

28.     Silver Fern also collects and maintains important contact information about the customer point person for purchasing its chemicals. When Silver Fern is servicing a company like Michelin, for example, it is not enough that its customer is "Michelin": it must know the specific individuals within that company—which, as of 2021, employed approximately 124,000 people—who are going to be responsible for placing and receiving orders for specific materials used in specific applications in specific locations. Identifying these individuals out of 124,000 takes time and money. And the same is true for nearly all of Silver Fern's customers.

29.     Silver Fern maintains this type of customer information, and much more, in at least two password-protected databases: ███████████████. In addition, all of Silver Fern's data on its internal network is protected by at least two layers of password protection (dual-factor authentication is in place, and many documents are additionally password protected), and Silver Fern grants permission to its employees to access specific drives and directories only on a need-to-know basis.

30.     Silver Fern's relationships with its customers are a valuable goodwill asset, which it pays its employees to develop, promote, and protect. Silver Fern entrusts its sales and marketing teams, including individuals like Defendants Lyons, Kinto, and Holmes, to deal with customers on its behalf. As an aspect of their job, they were expected to establish rapport and a relationship of trust with customers and potential customers to enhance Silver Fern's business and to protect and increase the value of Silver Fern's goodwill.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

31.     Silver Fern's compilation of customer data—including confidential information regarding customers' products, timing, delivery needs, and much more—now includes a wealth of details covering business relationships with over ███ customers.

**C.     Silver Fern's vendor relationships.**

32.     Silver Fern is a chemical distributor—it does not manufacture chemicals of its own. Silver Fern relies on vendors to supply the many chemicals that it sells. Vendor relationships are therefore essential.

33.     Establishing a business relationship with a chemical vendor is no small task. Silver Fern invests a lot of employee time and money to evaluate each of its vendors, and especially to ensure the quality and unique specifications of the chemicals that each vendor is supplying. Defendants Lyons, Kinto, and Holmes did not share in these costs as employees of Silver Fern—those costs were borne by their employer.

34.     Silver Fern, for example, pays ████████████████████████████████ ████████████████████████████████████████████ ████████████████████

35.     But this database information is just the beginning. Silver Fern must invest abundant resources to develop its confidential and proprietary compilations of information to evaluate and initiate business with any prospective vendor. ████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ Silver Fern expends extensive resources to assess and manage the risk inherent in establishing a relationship and working with overseas vendors in particular. The outcomes of this process—including the wins (and losses) Silver Fern

COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

experienced as a result of its expenditure of resources and calculated management of risk—are part of the proprietary knowledge base of the company.

36.     From the vendor's perspective, a prospective customer like Silver Fern must also be vetted and evaluated. Silver Fern's experience, ability to sell adequate volume, credibility in the industry, and other goodwill have been essential in opening the door to, and establishing, many valuable vendor relationships.

37.     As a vendor relationship matures, Silver Fern builds and retains substantial goodwill through its track record of being a trusted and reliable volume seller of the vendor's products. Performance over time and financial dependability are key criteria for building that relationship with a vendor. Vendor relationships are vital and extremely valuable goodwill in the chemical distribution industry. Silver Fern's goodwill with its vendors is property of the company.

38.     ████████████████████████████████████████ ████████████████████████████████████████ ██████████

39.     In addition, an important part of vetting any potential vendor relationship is becoming acquainted with the potential vendor. Silver Fern's co-founder Sam King, for example, has personally travelled overseas many times to meet and evaluate new vendors, including visiting chemical facilities to determine their viability. In many cases, Silver Fern sales staff have travelled with overseas vendors to make joint technical sales calls in North America.

40.     Silver Fern does not invest in vendor relationships only at the outset of a potential relationship—it also pays for the time and expense of having its sales staff, including Defendants

COMPLAINT - 9

Lyons, Kinto, and Holmes, manage and develop those relationships. Without vendors, Silver Fern cannot do business.

41.     Moreover, having a relationship with a ready, willing, and able vendor and a ready, willing, and able customer is frequently only the beginning of a long and labor-intensive process of vendor and product qualification with a given customer. Establishing the required nexus between the right vendor and the right customer can take many months or even years to achieve. This process frequently involves providing samples (such as those taken by Defendant Holmes from Silver Fern's Seattle office, as set forth below) as well as extensive documentation to the customer, and can involve layers of technical, regulatory, and quality assessment regarding the specific product and the specific manufacturer. Silver Fern frequently invests in these long and demanding qualification processes, only a fraction of which pan out. Overall, the company's investment in bringing the right manufacturer and product to customers is very substantial.

42.     Silver Fern also owns its relationships with its vendors as a valuable asset. Silver Fern entrusts its sales and marketing teams, including individuals like Defendants Lyons, Kinto, and Holmes, to deal with vendors on its behalf. As an aspect of their job, they were expected to establish rapport and a relationship of trust with vendors and potential vendors to enhance Silver Fern's business and to protect and increase the value of Silver Fern's goodwill. These relationships are a valuable goodwill asset of Silver Fern that it pays its employees to develop, promote, and protect.

43.     Silver Fern's list of approved vendors—including confidential information about those vendors' products, and a wealth of details about their manufacturing, logistics and business practices—now includes over ■■ product vendors, plus more than ■■ additional vendors in the areas of transportation, warehousing, and other services.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

44.     As to the latter, Silver Fern similarly must invest time and money into potential relationships. Silver Fern, for example, is a member of the National Association of Chemical Distributors ("NACD"). Silver Fern is verified every three years in NACD's "Responsible Distribution" Environmental, Health and Safety management system, which supports Silver Fern in its ongoing vetting, selection, and evaluation of legitimate and compliant handlers of chemical products, including transportation and warehousing providers.

**D.     As employees of Silver Fern, Defendants Lyons, Kinto, and Holmes leveraged Silver Fern 's confidential, proprietary, and trade secret information—and agreed to keep it confidential.**

45.     Defendant Scott Lyons joined Silver Fern in November 2008. Prior to his employment with Silver Fern, Defendant Lyons was largely unemployed, except for occasional restaurant work. He had no chemical industry experience, nor any background or experience in sales. Silver Fern originally hired Mr. Lyons to assist with its accounts payable, its simple accounting, and other customer service and secretarial functions. When he shifted into a sales function, because Defendant Lyons had no prior experience in the chemicals industry, all the customer accounts he serviced were obtained and cultivated through Silver Fern's process of customer acquisition; that is, the customers that Defendant Lyons was responsible for servicing were obtained solely from Silver Fern's investment in its customer acquisition process.

46.     Furthermore, Defendant Lyons was assigned to maintain relationships with several customers whose business relationship with Silver Fern were first initiated and managed by Sam King. In addition, the vendor relationships to which Defendant Lyons was granted access were not his own. Each resulted from Silver Fern's investment in vendor vetting and adoption, were the subject of confidential and trade secret compilations of information, and were the valuable goodwill of Silver Fern.

COMPLAINT - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

47.     When he joined Silver Fern, Defendant Lyons signed a Confidentiality Agreement, attached to this Complaint as Exhibit 1. He also signed an acknowledgement of receipt of Silver Fern's employee handbook, attached to this Complaint as Exhibit 2. In both, Defendant Lyons agreed to maintain the confidentiality of Silver Fern's confidential and proprietary information, including "without limitation, the following: sales plans, business plans, sales forecasts, product lists, pricing information, the identity of our customers, the identity of our suppliers, and company financial information." In addition, he also agreed to keep confidential "all details of our transactions with customers and suppliers, all details of our sales and sourcing operations, and all details of our financial operations."

48.     Defendant King Holmes joined Silver Fern in November 2008. When he joined, Defendant Holmes had no chemical industry background. He had owned a small book-selling company that set up book fairs in commercial lobbies. Because the "book fair" business was dying thanks to the rise of online sellers, Defendant Holmes sold his business for a small amount of money and had no real prospects for a new job. Defendant Holmes, however, was a close friend of Silver Fern co-founder Sam King, who hired him to start as part of Silver Fern's sales team. Because Defendant Holmes had no prior experience in the chemicals industry all the customer accounts he serviced were obtained and cultivated through Silver Fern's process of customer acquisition; that is, the customers Defendant Holmes serviced were customers he obtained from Silver Fern's investment in its customer acquisition process.

49.     Furthermore, Defendant Holmes was assigned to maintain relationships with several customers whose business relationship with Silver Fern were first initiated and managed by Sam King. In addition, all vendor relationships to which Silver Fern granted Defendant Holmes access resulted from Silver Fern's investment in vendor vetting and adoption, were the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    subject of confidential and trade secret compilations of information, and were the valuable

2    goodwill of Silver Fern.

3         50.    When he joined Silver Fern, Defendant Holmes signed a Confidentiality

4    Agreement, attached to this Complaint as Exhibit 3. He also signed an acknowledgement of

5    receipt of Silver Fern's employee handbook, attached to this Complaint as Exhibit 4. In both,

6    Defendant Holmes agreed to maintain the confidentiality of Silver Fern's confidential and

7    proprietary information, including "without limitation, the following: sales plans, business plans,

8    sales forecasts, product lists, pricing information, the identity of our customers, the identity of

9    our suppliers, and company financial information." In addition, he also agreed to keep

10   confidential "all details of our transactions with customers and suppliers, all details of our sales

11   and sourcing operations, and all details of our financial operations."

12        51.    Defendant Troy Kinto joined Silver Fern in March 2014. Immediately prior to his

13   employment with Silver Fern, Defendant Kinto worked for another chemical distributor. Though

14   he had experience in the industry, Defendant Kinto's business growth was based on active

15   prospects that he received from, and developed with the support of, Silver Fern. Indeed, the vast

16   majority of the customer accounts he serviced were obtained and cultivated through Silver Fern's

17   process of customer acquisition; that is, the customers that Defendant Kinto was responsible for

18   servicing were obtained primarily from Silver Fern's investment in its customer acquisition

19   process. ██████████████████████████████████████████████████

20   ████████ Defendant Kinto's highest-ranking customer in 2022, ████████████, was an account

21   that Sam King brought in and established before he handed it off to Defendant Kinto.

22        52.    In addition, virtually all vendor relationships to which Defendant Kinto was

23   granted access resulted from Silver Fern's investment in vendor vetting and adoption, were the

COMPLAINT - 13

1    subject of confidential and trade secret compilations of information, and were the valuable

2    goodwill of Silver Fern.

3         53.    When he joined Silver Fern, Defendant Kinto signed a Confidentiality

4    Agreement, attached to this Complaint as Exhibit 5. He also signed an acknowledgement of

5    receipt of Silver Fern's employee handbook, attached to this Complaint as Exhibit 6. In both,

6    Defendant Kinto agreed to maintain the confidentiality of Silver Fern's confidential and

7    proprietary information.

8         54.    Defendants Lyons, Kinto, and Holmes joined Silver Fern in, or later transitioned

9    to, sales roles. As such, their compensation was largely commission-based.

10        55.    But neither Defendant Lyons nor Defendant Holmes joined Silver Fern with an

11   established customer base. That is, neither of them brought existing customers to Silver Fern.

12   While Defendant Kinto brought a handful of customers to Silver Fern, the vast majority of the

13   Silver Fern customers he serviced were provided to him as active prospects that Silver Fern

14   produced. Defendants Lyons, Kinto, and Holmes relied to a great degree on active prospects

15   generated and paid for by Silver Fern, as well as Silver Fern's existing customer relationships,

16   when establishing and maintaining the customer relationships from which they were paid

17   commissions. Indeed, approximately half of the customers that Defendant Lyons was responsible

18   for servicing prior to his departure were customers that were brought to Silver Fern directly by

19   Sam King, its co-founder.

20        56.    ██████████████████████████████████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ██████████████████████████████████.

COMPLAINT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

57.     Defendants Lyons, Kinto, and Holmes profited handsomely from the investment Silver Fern made in its trade secret and confidential information, its customer and vendor relationships, and its other goodwill.

58.     Defendant Lyons' last three years of salary at Silver Fern was as follows:

59.     Defendant Kinto's last three years of salary at Silver Fern was as follows:

60.     Defendant Holmes last three years of salary at Silver Fern was as follows:

61.     As a result of their employment, Defendants Lyons, Kinto, and Holmes had access to the following databases and information, which Silver Fern maintains as confidential through multiple layers of access and password restrictions:

COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992



62. Defendants Lyons, Kinto, and Holmes had access to all this confidential and trade secret information by virtue of their employment with Silver Fern.

63. This information is not generally known, is not known to anyone outside Silver Fern, and Silver Fern takes steps to keep it confidential. ████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

█████████████████████████████████████████████████████ are accessible only to Silver Fern employees with a business need to know it. Further, all employees are required to sign an acknowledgment of Silver Fern's confidentiality requirements as part of the Employee Handbook as a condition of employment. In addition, all employees are required to sign a Confidentiality Agreement as a condition of employment. The confidentiality requirements of Silver Fern's employee policies, as well as the Confidentiality Agreement signed by all Silver Fern employees, prohibit disclosure of Silver Fern's trade secrets and other confidential and proprietary information.

64.     The information itself derives independent economic value from not being generally known. ████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████. This information is invaluable for businesses in the chemical industry, and it derives its value from its confidentiality.

65.     Silver Fern has invested millions of dollars in collecting, analyzing, and storing this information for its sole economic benefit. To get this information by legitimate means would take many years, tens of thousands of employee hours, and millions of dollars.

66.     As set forth above, Silver Fern's relationships with its customers and vendors are a significant goodwill asset of its business. The company entrusted Defendants Lyons, Kinto, and Holmes with its trade secrets related to those relationships, as well as its confidential and proprietary information, with the understanding and contractual obligation that they would always keep the information confidential, use it solely for Silver Fern's business purposes, and not use it as a basis for personal gain.

COMPLAINT - 19

**E.      Defendants Lyons, Kinto, and Holmes engaged in private discussions with Defendants Ambyth and Morgan while still Silver Fern employees.**

67.      On information and belief, Defendants Lyons, Kinto, and Holmes were conspiring with Defendants Ambyth and Morgan as early as January 2023 for Defendants Lyons, Kinto, and Holmes to convert Silver Fern's business opportunities for their new venture with Ambyth.

68.      While Silver Fern and Defendant Ambyth are competitors in the chemical distribution industry, they also sometimes do business with each other—meaning they each place orders with the other for chemicals they need for resale to customers. Prior to Defendants Lyons, Kinto, and Holmes' starting as Senior Partners at Defendant Ambyth, Defendant Ambyth was a very small company run by Defendant Morgan.

69.      As such, and as part of Silver Fern's ongoing business relationship with Defendant Ambyth, Defendants Lyons, Kinto, and Holmes have known Defendants Morgan and Ambyth for years.

70.      On January 18, 2023, Defendant Holmes sent an instant message to Defendant Kinto on Microsoft Teams, a platform Silver Fern provided for their use. The message read: "For sure. Maybe this weekend. I'm gonna have beers w/ Row tomorrow night." On information and belief, "Row" is Defendant Rowland Morgan. Three weeks later, Defendant Holmes returned to the Teams chat, searched out that single message and deleted it. On information and belief, Defendant Holmes deleted that single message so that there would be no evidence of his collusion with Defendants Morgan and Ambyth.

71.      During a regularly scheduled weekly Sales Meeting on February 22, 2023, Sam King made a detailed presentation regarding ████████████████████████████
████████████████████████████████████████████████

COMPLAINT - 20

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1 ███████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████.

7      72.     Also on February 22, 2023, Mr. King sent a follow-up email about the meeting to

8 Silver Fern's sales team. Defendant Holmes not only sent the email to his wife—a former Silver

9 Fern customer service employee—he also BCC'd Defendant Morgan on the email. There was no

10 legitimate business reason for Defendant Holmes to send the email to Defendant Morgan.

11 Defendants Kinto and Lyons would each go on to forward the same email to his personal email

12 address, tkinto14@gmail.com and scottlyons25@gmail.com, respectively, in April 2023.

13      73.     In March 2023, Defendants Lyons, Kinto, and Holmes attended a sales conference

14 with another Silver Fern employee, Esther Kannenberg. Because Ms. Kannenberg was being

15 trained for her new position as Supply Chain and Sourcing Manager, Defendant Kinto organized

16 her schedule, and she attended the majority of meetings at the sales conference with him. She

17 was also invited to attend a customer dinner with Defendants Lyons, Kinto, and Holmes.

18      74.     Defendant Lyons, however, had arranged for a dinner with Defendants Morgan

19 and Ambyth to take place on or about Saturday, March 25, with Defendants Kinto and Holmes.

20 Though she had been invited to attend the other meetings and customer dinners, Defendant

21 Lyons made sure to tell Ms. Kannenberg that she was not welcome at the dinner with Defendants

22 Morgan and Ambyth. In a phone call on or about March 22, Defendant Lyons informed Ms.

23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Kannenberg that—although he had made the dinner reservation—there was not enough room at

2   the table for her with Defendants.

3      75.    On March 25, the day of the dinner, Defendant Lyons again informed Ms.

4   Kannenberg that there was no room for her at the dinner that night, and that it would be

5   unnecessary for her to attend because Defendants just wanted to "hang with the boys and shoot

6   some shit."

7      76.    Defendants thus had dinner on March 25 and deliberately excluded another Silver

8   Fern employee—an employee whom Silver Fern had sponsored to attend this conference at

9   considerable expense and for the express purpose of training, mentoring, and exposure to

10  meetings with Silver Fern's business associates. If Defendants Lyons, Kinto, and Holmes had

11  been performing their job duties for Silver Fern, they would have introduced Ms. Kannenberg to

12  Defendant Morgan during this meal, and all would have cultivated their relationship with

13  Defendant Ambyth, a Silver Fern vendor, for the benefit of Silver Fern.

14     77.    On information and belief, and given Defendants Lyons, Kinto, and Holmes'

15  departure from Silver Fern and induction into Ambyth as "Senior Partners" just three weeks

16  later, Defendants discussed and planned the departures of Lyons, Kinto, and Holmes at this

17  dinner. On information and belief, they also discussed their planned conversion of Silver Fern's

18  confidential, proprietary, and trade secret information. Indeed, Defendants Kinto and Holmes

19  began requesting their employment records from Silver Fern within the week following this

20  meeting.

21

22

23

COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**F.    Defendants Lyons, Kinto, and Holmes appropriated and deleted Silver Fern's confidential and trade secret information for months—and breached their duties of loyalty.**

78.    Defendants Lyons, Kinto, and Holmes did not wake up on the morning of April 17, 2023, and decide to join a new company as Senior Partners. Instead, they planned for months. But more than planning, they began—while still employed with Silver Fern—to start appropriating Silver Fern's business opportunities, including diverting customer orders to Ambyth and potential vendors, for their own future gain.

79.    Defendant Holmes began as early as February 2023. ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Though he had no legitimate business reason to do so, Defendant Holmes BCC'd his wife, Helen Holmes, on the email.

80.    That same day, February 15, Defendant Holmes sent an email from his Silver Fern email address to established Silver Fern customer ██████████████████████ ████████████████████████████████████████; the customer noted that he would "contact [Defendant Holmes] most likely in May or June" on this—i.e., past Defendant Holmes' departure date from Silver Fern. Defendant Holmes responded that he would check in with the customer around that time frame, and BCC'd his personal email (kingkholmes@gmail.com) on the email. He had no legitimate business reason to do so.

81.    Between March 7 and March 9, Defendant Kinto steered yet another business opportunity away from Silver Fern and to Defendant Ambyth. In response to a customer request for ████████████████████████████████████████████████████████████████

COMPLAINT - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

█████████████████████████. When the customer responded that she would "let [him] know," Defendant Kinto emailed the customer and asked her to "Please give me a call on this. . . . Call my cell phone number." The customer responded that she was in a meeting, but would "give [him] a call shortly." Just over an hour later, Defendant Kinto sent a new email to the customer, this time cc'ing Defendant Morgan, stating that "Rowland Morgan, owner of Ambyth Chemical, can help you with the ████████████████████████

82.     On April 3, 2023, Defendant Holmes changed his email of record with ADP, Silver Fern's payroll services provider, from his Silver Fern email address to his personal gmail address.

83.     The same day, April 3, Defendant Holmes BCC'd his wife, from his Silver Fern email address, on an email string with two industry contacts. Defendant Holmes claimed that he was asking for a "friend looking for" the contacts' information about ████████████████ ███████ and other items. There was no legitimate business reason for Defendant Holmes to BCC his wife on the email chain.

84.     Though he had no legitimate business reason to do so, Defendant Holmes also BCC'd his wife, again from his Silver Fern email address, on an email in which he asked a contact to confirm pricing information on those same products.

85.     The same day, April 3, Defendant Holmes took a screenshot immediately after opening two files related to his biggest products. He did the same thing on April 5. On information and belief, Defendant Holmes took these screenshots so that there would be no record that he had sent the file information to himself.

86.     ████████████████████████████████ █████████████████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5        87.    Defendant Holmes forwarded ████████ email to his personal email and to his

6      wife. At no point did he inform Silver Fern of the new potential product.

7        88.    The same day, April 6, Defendant Holmes sent an email to yet another Silver Fern

8      customer regarding his ability to fulfill its purchase order. Though the customer was inquiring

9      how to get set up in Silver Fern's system (via a credit application), Defendant Holmes gave the

10    customer the option to submit the purchase order to a "third part[y]," i.e., a distributor other than

11    his employer Silver Fern, who is "a little less formal on setting up accounts." On information and

12    belief, that third party was Defendant Ambyth. Defendant Holmes similarly wrote: "OR, you can

13    send a PO to another company and we can run it through them." On information and belief, that

14    third party was Defendant Ambyth.

15       89.    As of April 11, Defendant Holmes began informing multiple established Silver

16    Fern customers to "call [him] on his cell" before they submitted any purchase orders. Defendant

17    Holmes was supposed to be on vacation the week of April 10–14 (the week before his

18    resignation)—or at least that is what he informed Silver Fern. During that week, Defendant

19    Holmes sent the following emails—with the following excerpts—from his Silver Fern email to

20    Silver Fern customers who, on information and belief, were looking to place orders with Silver

21    Fern:

22          a.   April 11, 2023 at 1:28 p.m.: "Please call my cell Next week"

23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

b. April 11, 2023 at 1:44 p.m.: "Can you call me next week? Please call me on my cell."

c. April 11, 2023 at 3:39 p.m.: "Call me before you send any purchase orders"

d. April 11, 2023 at 4:59 p.m.: In response to a statement that someone had tried his business line, "Please CALL MY CELL on Monday"

e. April 11, 2023 at 5:04 p.m.: "Call my Cell on Monday"

f. April 12, 2023 at 4:18 p.m.: "Please call my cell."

g. April 13, 2023 at 11:24 a.m.: "PLEASE CALL MY CELL!!"

h. April 14, 2023 at 9:17 a.m.: "Call me on my cell Monday, if you need"

i. April 14, 2023 at 9:55 a.m.: "**Can you please call my Cell Monday?**"

j. April 14, 2023 at 10:09 a.m.: "please call me."

k. April 14, 2023 at 11:08 a.m.: "please call my cell"

l. April 14, 2023 at 1:22 p.m.: "Can you check back on Monday?"

m. April 14, 2023 at 1:29 p.m.: "Call my cell next week." Defendant Holmes BCC'd his wife, Helen Holmes, on the email

n. April 14, 2023 at 1:29 p.m.: "Can you call me on my cell next week?"; Defendant Holmes later told this same customer to include his personal email account on their communications going forward

o. April 14, 2023 at 1:33 p.m.: "Call me Monday on my cell"

p. April 14, 2023 at 3:29 p.m.: "call my cell next week"

q. April 14, 2023 at 7:00 p.m.: In response to a purchase order from an existing customer, Defendant Holmes wrote "call me on my cell next week."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

r.   April 15, 2023 at 6:33 p.m.: "can you call my cell on Monday? . . . We have some traction on the pork meal, but I may run this through a different Avenue."

s.   April 15, 2023 at 8:18 p.m.: "Please call my cell"

t.   April 15, 2023 at 9:29 p.m.: "Call my cell"

u.   April 16, 2023 at 9:38 a.m.: "please call my cell on Monday."

v.   April 16, 2023 at 6:31 p.m.: "Please call my cell tomorrow"

w.   April 16, 2023 at 6:40 p.m.: "Call my cell tomorrow"

90.   Also on April 12, 2023, Defendant Holmes told one of Silver Fern's key vendors, █████████████, to "call my cell on Monday."

91.   Besides trying to keep email traffic—and thus a paper trail—light, it appears that Defendants attempted to destroy significant amounts of evidence related to their wrongdoing before they left Silver Fern.

92.   Between January 17 and April 17, Defendant Holmes "permanently deleted" 10,908 items in his Outlook mailbox. Of those, he permanently deleted 4,485 on April 14 alone—a day he was purportedly on vacation. April 14 was Defendant Holmes' last day of employment with Silver Fern—and the number of emails he attempted to "permanently delete" that day were more than the total number of emails he attempted to permanently delete in the entire preceding month.

93.   Defendants Lyons and Kinto also attempted to permanently delete many items from their Silver Fern email accounts.  Kinto "permanently deleted" 2,544 items from his Outlook mailbox from January 17 through April 14, deleting 1,168 items on April 14 alone—a day he was also purportedly on vacation. April 14 was Defendant Kinto's last full day of

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

employment with Silver Fern—and the number of emails he attempted to "permanently delete" that day were 84% of all the messages he deleted in the preceding three months.

94.     Defendant Lyons "permanently deleted" 2,281 items from his Outlook mailbox from January 17 through April 17, deleting 1,476 items on April 14 alone. April 14 was Defendant Lyons' last full day of employment with Silver Fern—and the number of emails he attempted to "permanently delete" that day was over two-thirds of all the messages he deleted in the preceding three months.

95.     None of the Defendants had any legitimate business purpose for attempting to permanently delete anything in his Silver Fern email account. In fact, Silver Fern specifically advises its employees—and had done so multiple times during Defendant Lyons', Kinto's, and Holmes' employment—that Silver Fern email was company property and should not be permanently deleted.

96.     As of this pleading, Silver Fern has recovered 15,612 of the Defendants' "permanently deleted" items for the period of approximately December 31, 2022 to April 16, 2023. Unbeknownst to Defendants Lyons, Kinto, and Holmes, their Microsoft 365 accounts were each on a litigation hold for that period, meaning that permanently deleted items were not, in fact, permanently deleted. On information and belief, Defendants Lyons, Kinto, and Holmes intentionally attempted to permanently delete emails that they knew would evidence their unlawful and tortious conduct as described herein. On information and belief, Defendants Lyons, Kinto, and Holmes also intentionally attempted to permanently delete emails in an attempt to deprive Silver Fern of information related to ongoing business opportunities that Defendants planned to exploit for their own benefit.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**G.    Defendants Lyons, Kinto, and Holmes accessed, took, and deleted Silver Fern's confidential, proprietary, and trade secret information in the days before and after they ended their employment.**

97.    On the morning of Monday, April 17, between 6:30 and 6:31 a.m. PDT, Defendants Lyons, Kinto, and Holmes sent emails to Sam and Lisa King resigning from their positions with Silver Fern. Both Defendant Lyons and Defendant Kinto wrote that their resignations were effective as of "Friday, April 14."

98.    Then, between approximately 7 and 7:30 a.m., Defendants Kinto and Holmes sent emails from their personal email addresses to Silver Fern's "staff_silverfernchemical.com" listserv. They each notified their colleagues they were no longer employed by Silver Fern. Instead, each was joining Defendant Ambyth Chemical as a "Senior Partner." Defendant Lyons sent a virtually identical job change announcement approximately 33 minutes before his resignation from Silver Fern.

99.    Defendants Lyons, Kinto, and Holmes did not send those emails just to Silver Fern's staff, however. Though they were announcing their departure from Silver Fern, on information and belief, Defendants Lyons, Kinto, and Holmes each BCC'd most—if not all—of their Silver Fern customer and vendor contacts and included email signatures with their Ambyth Chemical contact information, thus using Silver Fern's confidential customer and vendor contact information to promote themselves as Senior Partners of Ambyth.

100.    Just a few days before, on April 14—what he told Silver Fern and Silver Fern's customers was his last day—Defendant Lyons was emailing with one of Silver Fern's vendors, ███████████, regarding ████████████████████████████████████████ ████████████Though he was planning to resign, Defendant Lyons responded that he would "look

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

this over and be in touch." Defendant Lyons, in response to Sam King emailing him an active

prospect, similarly replied "I'll take a look."

101.    Late in the afternoon the same day, Defendant Kinto emailed an existing Silver

Fern customer that he could not get the customer a particular product at that time, but could in

late May or early June. He encouraged the customer to "Call my cell with any questions or

concerns."

102.    The next day, on Saturday, April 15—the day after his final day of employment

with Silver Fern—Defendant Lyons logged into his Silver Fern desktop PC, which he had used

in his home office, and accessed Silver Fern's password-protected ██████ application to

review confidential information related to his former customer accounts, including sales

summaries, the highest-ranking customer accounts he had formerly serviced for Silver Fern (and

the value of the sales to those customers), the highest-ranking products he had sold for Silver

Fern, recent orders (showing customers active in the preceding six months), customer

information (including customer contacts), and a list of Silver Fern's suppliers. Defendant Lyons

had to get through three layers of password protection in order to access the ██████

████████████████████████████████████████████████

████████████████████████

103.    On Sunday, April 16—two days after his last day with Silver Fern—Defendant

Lyons again went through three layers of password protection on a Silver Fern PC to access

████████████████ application to review confidential information related to sales

_____

 █ ██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    summaries regarding his former customer accounts. In total, Defendant Lyons accessed 89

2    separate ██████████ records in the two days after his last day of employment with Silver Fern.

3    This access included sales agent summaries, product information, supplier information, and

4    multiple pages of Silver Fern customer information.

5        104.    On Saturday, April 15 and Sunday, April 16—the two days following his last day

6    with Silver Fern—Defendant Holmes accessed Silver Fern's password-protected ████████

7    application each day to review confidential information related to his former customer accounts,

8    including sales summaries, the highest-ranking customers (and the value of the sales to those

9    customers) he had formerly serviced for Silver Fern, the highest ranking products he had sold for

10   Silver Fern, and recent orders. In total, Defendant Holmes accessed 63 separate ████████

11   records in the two days after his last day of employment with Silver Fern. This access included

12   sales agent summaries, an unknown chart, and multiple pages of Silver Fern customer lists.

13   Defendant Holmes used a ███████████████████████████████████

14       105.    On Sunday, April 16, at 6:30 p.m.—just twelve hours before he sent an email

15   resigning from Silver Fern—Defendant Holmes was in Silver Fern's Seattle office. He had no

16   regular business in the office on the weekends, and he certainly had no legitimate business

17   reason to be in Silver Fern's office on this Sunday, two days after his last day at Silver Fern.

18       106.    Despite having no business in the office that day—and even though he intended to

19   send a resignation email just twelve hours later—Defendant Holmes went through two layers of

20   password protection (dual-factor authentication) to log into his former Silver Fern desktop PC

21   and began accessing confidential customer information. Specifically, he accessed files in a folder

22   called ██████████████████████████████████████████

23   ████████████████████████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    107. ████████████████████████████████████████

2    ████████████████████████████████████████

3    █████████████████████████████████████████████

4    ████████████

5

6

7

8

9

10

11

12

13

14

15



16    108.    Each of the files that Defendant Holmes accessed contains Silver Fern's

17    confidential and proprietary information, including but not limited to ████████████

18    ██████████████████████████████████████

19    ████████████████████████ This information includes confidential, non-

20    public information entrusted to Silver Fern by its customer, ██████████ While Silver Fern expects

21    customer information to be maintained ████████████████████

22    █████████████████████████████████████

23    █████████████████████████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1 ███████████████████████████████████████████

2 ████████████████████████████████████████████

3 █████████████████████████████████████████████

4 ████████████████████████████████████████████

5 █████████████████████████████████

6       109.    That night, before he left the office for the final time, Defendant Holmes took

7 Silver Fern product samples and notebooks with him. Neither the product samples nor the

8 notebooks belong to him.

9       110.    On Monday, April 17—three days after his last day with Silver Fern, and the day

10 he sent his resignation email—Defendant Kinto logged into his Silver Fern desktop PC, which he

11 had used in his home office, and accessed Silver Fern's password-protected ██████████

12 application to review confidential information related to his former customer accounts, including

13 sales summaries, the highest-ranking customer accounts he had formerly serviced (and the value

14 of the sales to those customers) and the highest-ranking products he had sold for Silver Fern

15 during the preceding 12 months. He forwarded the information to his personal email address at

16 8:17 a.m. CDT. ███████████████████████████████████████

17 ████████████████████████████████████████████

18 █████████████████████████████████

19       111.    Defendant Kinto kept his laptop for two weeks following his resignation from

20 Silver Fern. Silver Fern is still in the process of discerning what confidential information

21 Defendant Kinto accessed or attempted to permanently delete in that two week period.

22       112.    Defendants Lyons, Kinto, and Holmes each took copious handwritten notes

23 regarding their servicing of their customer and vendor accounts while at Silver Fern. On

COMPLAINT - 33

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

information and belief, those notebooks contain confidential and trade secret information belonging to Silver Fern. Defendants Lyons, Kinto, and Holmes have not returned any of these notes to Silver Fern.

**H.  Defendants' conspiracy has had its intended effect: They have appropriated Silver Fern's confidential, proprietary, and trade secret information for their own economic benefit—and continue to do so.**

113.    Using Silver Fern's trade secrets and other confidential proprietary information they misappropriated, Defendants Lyons, Kinto, and Holmes have already begun contacting Silver Fern customers and vendors in an attempt to divert their business from Silver Fern to Defendant Ambyth.

114.    On April 19, 2023, just two days after Defendant Kinto sent his email resigning from Silver Fern, a current Silver Fern customer—███████████████████████ ████████████—mistakenly sent an email payment notice to Silver Fern that was meant for Defendant Ambyth.

115.    ████████████████████████████ ████████████████████████████████████ ████████████████████████████ ███████████████████

116.    ████████████████████████████ █████████████████

117.    Just two weeks later, however—and two days after Defendant Kinto's email resignation—████████████████████████ ████████████████████████

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

███████ sent the payment notice to Defendant Kinto's former Silver Fern email address, and cc'd Defendant Morgan of Ambyth.

118.    It is apparent that Defendant Kinto was sending other business to Ambyth prior to his departure from Silver Fern. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

119.    A couple weeks later, on May 2, 2023, ███████████ sent an additional three purchase orders to Defendant Kinto's former Silver Fern email address, again meant for Defendant Ambyth. The purchase orders totaled $145,792.48. The purchase orders were for ███████████████████████, a category of materials Silver Fern has been selling to ███████████ business for several years.

120.    On May 3, yet another misdirected email came to Defendant Kinto's Silver Fern email address, again meant for Defendant Ambyth. ████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████ The sender also informs his team ████████████ that Ambyth will be taking on all of the business that had once gone to Silver Fern: "As advised, Troy is now with Ambyth, who will basically take over all of Silver Fern's volume once the process is complete."

121.    On May 5, yet another misdirected email came to Defendant Kinto's Silver Fern email address, this time meant for Defendant Kinto. The email was from a representative of ███

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1 ████████████████████████████████████████████████████████

2 ██████████. The email included "a few options" for a logo that Defendant Kinto could use.

3 ████████████████████████████████████████████████

4 ████████████████████████████████.

5      122. ████████████████████████████████████████

6 ██████████████████████████████████████████

7 ██████████████████████████████████████████

8 ████████████████████████████

9      123.    Silver Fern thus has a reasonable belief that Defendants are using Silver Fern's

10 confidential and proprietary information for their own benefit, to the great prejudice of Silver

11 Fern, thereby causing irreparable harm.

12      124.    Indeed, Silver Fern has lost not only profitable customer relationships—and

13 Defendants are threatening to unlawfully take more—but Silver Fern has lost the investment that

14 it made in identifying and building those customer relationships. Silver Fern has, of course,

15 suffered and will continue to suffer additional harm. That harm includes, but is in no way limited

16 to, the fact that Silver Fern will now need to sell significant amounts of product at a loss.

17 Because Silver Fern had designated certain products to sell to certain customers, and those

18 customers are now buying product from Defendant Ambyth, Silver Fern will need to liquidate

19 inventory at a significant loss.

20      125.    On information and belief, Defendant Ambyth, by and through its principal

21 Defendant Morgan, was aware of the confidentiality agreements between Defendants Lyons,

22 Kinto, and Holmes, as Defendants Kinto and Holmes had each requested (and received) copies

23 of those agreements in March and April 2023. On information and belief, Defendants Ambyth

COMPLAINT - 36

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

and Morgan nevertheless encouraged Defendants Lyons, Kinto, and Holmes to breach—and facilitated their breach of—those confidentiality agreements for Defendants' own monetary benefit.

## I.     Defendants' conduct was willful and malicious.

126.    In departing Silver Fern, Defendants Lyons, Kinto, and Holmes conspired together to collect Silver Fern's trade secret and confidential information and depart Silver Fern at the same time and without notice.

127.    Defendants Lyons, Kinto, and Holmes acted in such a manner as to intentionally maximize the harm they were inflicting on Silver Fern by, among other things, resigning with no notice, thereby depriving Silver Fern of the opportunity to inform its customers of the transition and otherwise prepare for the loss of three members of its sales team.

128.    Defendants Lyons, Kinto, and Holmes also acted in such a manner as to intentionally maximize the harm they were inflicting on Silver Fern by, among other things, permanently deleting items from their email accounts, thereby attempting to deprive Silver Fern of valuable and indispensable business records, and the opportunity to examine what they had done and what communications they had prior to their departure.

129.    Defendants Lyons, Kinto, and Holmes' conduct was willful and malicious.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
#### (Against Defendants Lyons, Kinto, and Holmes)

130.    Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth herein.

COMPLAINT - 37

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    131.    Defendants Lyons, Kinto, and Holmes knowingly and with the intent to defraud

2    exceeded their authorized access to Silver Fern's computers, and by means of such conduct

3    furthered their intended fraud and obtained something of value, i.e., Silver Fern's confidential,

4    proprietary, and trade secret information, in violation of 18 U.S.C. § 1030(a)(4).

5    132.    The value of what Defendants Lyons, Kinto, and Holmes obtained exceeded

6    $5,000 in a one-year period.

7    133.    Silver Fern suffered damage and loss by reason of Defendants Lyons, Kinto, and

8    Holmes' exceeding of their authorized access to Silver Fern's computers. Silver Fern is entitled

9    to compensatory damages, as well as injunctive relief, including but not limited to the cost of

10   responding to Defendants Lyons, Kinto, and Holmes' offense, cost incurred, and other

11   consequential damages.

12                           **SECOND CAUSE OF ACTION**
                               **BREACH OF CONTRACT**
13                      **(Against Defendants Lyons, Kinto, and Holmes)**

14   134.    Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth

15   herein.

16   135.    Silver Fern had valid and binding contracts with Defendants Lyons, Kinto, and

17   Holmes in the form of their respective confidentiality agreements.

18   136.    Silver Fern performed in accordance with all material obligations, terms, and

19   conditions of the confidentiality agreements.

20   137.    Defendants Lyons, Kinto, and Holmes breached their confidentiality agreements

21   by, among other things, using and disclosing confidential, proprietary, or trade secret information

22   for purposes other than the performance of their job duties with Silver Fern and for their own

23   economic benefit.

COMPLAINT - 38

138.     Defendants' breach of their respective confidentiality agreements, including by disclosing Silver Fern's confidential, proprietary, and trade secret information, damaged Silver Fern in an amount to be proven at trial.

139.     Because Defendants threaten Silver Fern's customer relationships and associated goodwill, Silver Fern has suffered and will continue to suffer irreparable harm. Silver Fern is thus entitled to temporary, preliminary, and permanent injunctive relief to halt Defendants' further breaches of their respective confidentiality agreements.

## THIRD CAUSE OF ACTION
### BREACH OF DUTIES OF LOYALTY AND CONFIDENTIALITY
### (Against Defendants Lyons, Kinto, and Holmes)

140.     Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth herein.

141.     As former employees of Silver Fern with access to Silver Fern's trade secrets and other confidential and proprietary information, Defendants Lyons, Kinto, and Holmes had a confidential relationship with Silver Fern and a duty to maintain the secrecy of—and to protect from use or disclosure—its confidential information.

142.     Defendants Lyons, Kinto, and Holmes also had a duty not to misappropriate for themselves the goodwill, customer relationships, and vendor relationships that they were charged with maintaining and developing on Silver Fern's behalf.

143.     Defendants Lyons, Kinto, and Holmes owed Silver Fern a duty of loyalty during the period of their employment.

144.     Defendants Lyons, Kinto, and Holmes breached their duties of loyalty and confidentiality, and continue to breach their duty of confidentiality, by taking, using, and disclosing Silver Fern's trade secrets and other confidential and proprietary information, using

COMPLAINT - 39

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   such information on behalf of themselves and Defendant Ambyth, and misappropriating Silver

2   Fern's valuable customer relationships and goodwill.

3        145.    As a result of these breaches, Silver Fern has lost and will continue to lose the

4   value of its trade secrets and other confidential and proprietary information that Defendants

5   Lyons, Kinto, and Holmes possess, as well as the value of the goodwill, economic relationships,

6   and business opportunities that Silver Fern would have enjoyed but for Defendants Lyons, Kinto,

7   and Holmes' breaches of their duties to Silver Fern.

8        146.    Silver Fern has been and will continue to be irreparably injured, and Defendants

9   will be unjustly enriched, if Defendants are not enjoined from using and disclosing Silver Fern's

10  confidential and proprietary information for their own gain.

11                        **FOURTH CAUSE OF ACTION**
                **BREACH OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ.**
12                              **(Against All Defendants)**

13       147.    Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth

14  herein.

15       148.    Silver Fern's trade secrets relate to products and services used, sold, shipped, and

16  ordered in—or intended to be used, sold, shipped, or ordered in—interstate commerce.

17       149.    Silver Fern took reasonable measures to keep its trade secrets as described above

18  secret, including, without limitation, requiring confidentiality agreements of all employees.

19  Silver Fern also took steps to ensure that its information was subject to restrictions on use and

20  dissemination, including by physically restricting access to its offices and password-protecting

21  electronic access to its trade secrets.

22       150.    Silver Fern's trade secrets derive independent economic value from being not

23  generally known and not being readily ascertainable through proper means to another person

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

who is able to obtain economic value from the disclosure or use of the information. For example, Silver Fern spent years of time and substantial resources (including employee time and compensation; the collection, storage, and analysis of customer information described above; and other time and money) to identify and develop vendor relationships described above, among other things. For Defendants to have created and maintained the same data, information, relationships with customers, relationships with vendors, and contacts, would have taken tens of thousands of employee hours and many years of development. For these same reasons, Silver Fern's trade secrets are novel—i.e., they are not readily ascertainable from another source.

151.    Defendants Lyons, Kinto, and Holmes knew or had reason to know that Silver Fern's trade secrets were improperly obtained, particularly because each was aware during his employment with Silver Fern that he had an ongoing duty to maintain the confidentiality of Silver Fern's trade secrets even following his departure from Silver Fern. Their use of Silver Fern's trade secrets to further Defendant Ambyth's conversion of Silver Fern's business relationships contravened these ongoing obligations of confidentiality, and they constitute acquisition, distribution, and use of Silver Fern's trade secrets by improper means.

152.    Defendants have, in record time, converted Silver Fern's business relationships, including its relationships with its largest customers and vendors. As such, Silver Fern's trade secrets have been of immense value to Defendants in their efforts to quickly realize business opportunities for which they did not independently invest time or resources. Defendants misappropriated Silver Fern's trade secrets for that reason, and they have also realized economic value from that misappropriation.

153.    In violation of Silver Fern's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836, Defendants misappropriated Silver Fern's trade secrets in an improper and unlawful

COMPLAINT - 41

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

manner as alleged herein. Defendants Lyons, Kinto, and Holmes misappropriated Silver Fern's trade secrets under federal law because they acquired them knowing or having reason to know that they were acquired by improper means.

154.    Additionally, Defendants Morgan and Ambyth misappropriated Silver Fern's trade secrets because at the time they obtained and used them without Silver Fern's permission, Defendants knew or had reason to know that their knowledge of Silver Fern's trade secrets was derived from or through a person who had utilized improper means to acquire them, acquired them under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived them from or through a person who owed a duty to Silver Fern to maintain their secrecy or limit their use. Alternatively, Defendants Morgan and Ambyth misappropriated Silver Fern's trade secrets by using them without permission, knowing or having reason to know that the information constituted trade secrets acquired by accident or mistake.

155.    In addition to appropriating Silver Fern's trade secrets in its corporate capacity, Ambyth is liable for trade secret misappropriation due to the conduct of its employees/self-styled partners—Defendants Lyons, Kinto, and Holmes—within the scope of their employment with, and for the benefit of, Defendant Ambyth. Specifically, Defendants Lyons, Kinto, and Holmes knowingly obtained, used, and disseminated Silver Fern's trade secrets as identified above, and each did so within the scope of their employment for, and for the benefit of, Defendant Ambyth.

156.    As a direct and proximate result of Defendants' conduct, Silver Fern has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and the loss of the confidentiality of its trade secrets, for which there is no adequate remedy at law.

157.    Silver Fern has also suffered substantial damage as a direct and proximate cause of Defendants' conduct in an amount to be proven at trial.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

158.     Silver Fern is also entitled to recover the amounts by which Defendants have been unjustly enriched by their misappropriation.

159.     Because Defendants' conduct was willful and malicious as described herein, Silver Fern is also entitled to an award of exemplary damages equal to twice the damages awarded as actual losses and unjust enrichment.

160.     Because Defendants' conduct was willful and malicious as described herein, Silver Fern is also entitled to its reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**BREACH OF THE WASHINGTON UNIFORM TRADE SECRETS ACT, RCW 19.108.010 ET SEQ.**
**(Against All Defendants)**

161.     Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth herein.

162.     Silver Fern's trade secrets relate to products and services used, sold, shipped, and ordered in—or intended to be used, sold, shipped, or ordered in—interstate commerce.

163.     Silver Fern took reasonable measures to keep its trade secrets as described above secret, including, without limitation, requiring confidentiality agreements of all employees. Silver Fern also took steps to ensure that its information was subject to restrictions on use and dissemination, including by physically restricting access to its offices and password-protecting electronic access to its trade secrets.

164.     Silver Fern's trade secrets derive independent economic value from being not generally known and not being readily ascertainable through proper means to another person who is able to obtain economic value from the disclosure or use of the information. For example, Silver Fern spent years of time and substantial resources (including employee time and compensation; the collection, storage, and analysis of customer information described above; and

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   other time and money) to identify and develop vendor relationships described above, among

2   other things. For Defendants to have created and maintained the same data, information,

3   relationships with customers, relationships with vendors, and contacts, would have taken tens of

4   thousands of employee hours and many years of development. For these same reasons, Silver

5   Fern's trade secrets are novel—i.e., they are not readily ascertainable from another source.

6        165.     Defendants Lyons, Kinto, and Holmes knew or had reason to know that Silver

7   Fern's trade secrets were improperly obtained, particularly because each was aware during his

8   employment with Silver Fern that he had an ongoing duty to maintain the confidentiality of

9   Silver Fern's trade secrets even following his departure from Silver Fern. Their use of Silver

10  Fern's trade secrets to further Defendant Ambyth's conversion of Silver Fern's business

11  relationships contravened these ongoing obligations of confidentiality, and they constitute

12  acquisition, distribution, and use of Silver Fern's trade secrets by improper means.

13       166.     Defendants have, in record time, converted Silver Fern's business relationships,

14  including its relationships with its largest customers and vendors. As such, Silver Fern's trade

15  secrets have been of immense value to Defendants in their efforts to quickly realize business

16  opportunities for which they did not independently invest time or resources. Defendants

17  misappropriated Silver Fern's trade secrets for that reason, and they have also realized economic

18  value from that misappropriation.

19       167.     In violation of Silver Fern's rights under the Washington Uniform Trade Secrets

20  Act, RCW 19.108.010, Defendants misappropriated Silver Fern's trade secrets in an improper

21  and unlawful manner as alleged herein. Defendants Lyons, Kinto, and Holmes misappropriated

22  Silver Fern's trade secrets under state law because they acquired them knowing or having reason

23  to know that they were acquiring them by improper means.

COMPLAINT - 44

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

168.     Additionally, Defendants Morgan and Ambyth misappropriated Silver Fern's trade secrets because at the time they obtained and used them without Silver Fern's permission, Defendants knew or had reason to know that their knowledge of Silver Fern's trade secrets was derived from or through a person who had utilized improper means to acquire them, acquired them under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived them from or through a person who owed a duty to Silver Fern to maintain their secrecy or limit their use. Alternatively, Defendants Morgan and Ambyth misappropriated Silver Fern's trade secrets by using them without permission, knowing or having reason to know that the information constituted trade secrets acquired by accident or mistake.

169.     In addition to appropriating Silver Fern's trade secrets in its corporate capacity, Ambyth is liable for trade secret misappropriation due to the conduct of its employees/self-styled partners—Defendants Lyons, Kinto, and Holmes—within the scope of their employment with, and for the benefit of, Defendant Ambyth. Specifically, Defendants Lyons, Kinto, and Holmes knowingly obtained, used, and disseminated Silver Fern's trade secrets as identified above, and each did so within the scope of their employment for, and for the benefit of, Defendant Ambyth.

170.     As a direct and proximate result of Defendants' conduct, Silver Fern has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and the loss of the confidentiality of its trade secrets, for which there is no adequate remedy at law.

171.     Silver Fern has also suffered substantial damages as a direct and proximate cause of Defendants' conduct in an amount to be proven at trial.

172.     Silver Fern is also entitled to recover the amounts by which Defendants have been unjustly enriched by their misappropriation.

COMPLAINT - 45

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

173.    Because Defendants' conduct was willful and malicious as described herein, Silver Fern is also entitled to an award of exemplary damages equal to twice the damages awarded as actual losses and unjust enrichment.

174.    Because Defendants' conduct was willful and malicious as described herein, Silver Fern is also entitled to its reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE**
**(Against All Defendants)**

175.    Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth herein.

176.    Silver Fern had and continues to have valid business expectancies with its past and present customers and vendors as alleged herein.

177.    Defendants knew of those expectancies through Defendants Lyons, Kinto, and Holmes' employment with Silver Fern.

178.    Defendants intentionally interfered with those expectancies or caused their terminations as alleged herein.

179.    Defendants interfered with Silver Fern's relationships for an improper purpose or using improper means, including but not limited to unlawfully using Silver Fern's confidential and trade secret information to convert Silver Fern's business expectancies for Defendants' own economic benefit.

180.    Silver Fern has also suffered substantial damages as a direct and proximate cause of Defendants' conduct in an amount to be proven at trial.

COMPLAINT - 46

**SEVENTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE**
**(Against Defendants Morgan and Ambyth)**

181.     Silver Fern incorporates by reference the foregoing paragraphs as if fully set forth herein.

182.     Silver Fern had a valid business relationship and contracts containing confidentiality provisions with respect to Defendants Lyons, Kinto, and Holmes.

183.     Knowing of and about those relationships and confidentiality agreements, Defendants Morgan and Ambyth intentionally facilitated, encouraged, and induced Defendants Lyons, Kinto, and Holmes to breach their contractual obligations to Silver Fern.

184.     Defendants Morgan and Ambyth interfered with Silver Fern's relationships for an improper purpose or using improper means, including but not limited to unlawfully using Silver Fern's confidential and trade secret information to convert Silver Fern's business expectancies for Defendants' own economic benefit.

185.     As a result of Defendants Morgan and Ambyth's intentional interference with these relationships and contracts, Silver Fern has been and will continue to be irreparably injured, and Defendants Morgan and Ambyth will be unjustly enriched.

186.     Silver Fern has also suffered substantial damages as a direct and proximate cause of Defendants' conduct in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Silver Fern prays for judgment against Defendants as follows:

a.     Entering an order of injunction to prevent Defendants from committing future violations of the Defend Trade Secrets Act and Washington Uniform Trade Secrets Act;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

b.      Requiring Defendants to pay Silver Fern's monetary damages caused by Defendants' breaches of contract, theft of trade secrets, and tortious interference;

c.      Requiring Defendants to pay Silver Fern the amounts by which Defendants have been unjustly enriched by their misappropriation;

d.      Finding that Defendants acted willfully and maliciously, and awarding Silver Fern exemplary damages equal to twice the damages awarded as actual losses and unjust enrichment;

e.      Finding that Defendants acted willfully and maliciously, and awarding Silver Fern its reasonable attorneys' fees and costs;

f.      Awarding Silver Fern pre-judgment and post-judgment interest; and

g.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Silver Fern hereby demands a trial by jury on all appropriate issues raised in this Complaint.

Dated:  May 24, 2023

TOUSLEY BRAIN STEPHENS PLLC

By: *s/Kim D. Stephens*
    Kim D. Stephens, P.S., #11984
By: *s/Kaleigh N. Boyd*
    Kaleigh N. Boyd, WSBA #52684
    1200 Fifth Avenue, Suite 1700
    Seattle, WA 98101-3147
    Tel: (206) 682-5600
    Fax: (206) 682-2992
    kstephens@tousley.com
    kboyd@tousley.com

    *Counsel for Plaintiff Silver Fern Chemical, Inc.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992