UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SILVER FERN CHEMICAL, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT LYONS, an individual, et al.,<br><br>Defendants. | CASE NO. 2:23-cv-00775-TL<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

This is an action for damages and injunctive relief for the misappropriation of trade secrets, breach of contract, and other related claims. This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 22 (sealed)) (the "Motion"), with notice to Defendants. Having reviewed the Motion, Defendants' response (Dkt. No. 26), and all supporting materials, the Court DENIES the Motion.

ORDER DENYING MOTION
FOR TEMPORARY
RESTRAINING ORDER - 1

I.  BACKGROUND

Plaintiff Silver Fern Chemical, Inc., a chemical distribution company, brings this action against Defendants Scott Lyons, Troy Kinto, and King Holmes, former employees of Plaintiff, as well as Defendant Rowland Morgan, who operates Defendant Ambyth Chemical Company ("Ambyth"), a competitor with Plaintiff. Dkt. No. 7 (sealed) ¶¶ 1, 68 (complaint).

Defendants Lyons, Kinto, and Holmes began employment with Plaintiff at different times, but all worked as salespeople. *Id*. ¶¶ 45–55. Plaintiff alleges that each Defendant signed a "Confidentiality Agreement" that required them to maintain the confidentiality of Plaintiff's confidential and proprietary information. *Id*. ¶¶ 47, 50, 53; Dkt. Nos. 1-2, 1-4, 1-6. Because Defendant Kinto had prior work experience in the industry, his Confidentiality Agreement contained a clause exempting "prior knowledge and confidential information about certain customers, suppliers and products" from the Agreement. Dkt. No. 1-6 at 2. Plaintiff alleges that Defendants had access to a variety of confidential information as part of their employment. Dkt. No. 7 (sealed) ¶¶ 61–66.

Plaintiff alleges that Defendants Lyons, Kinto, and Holmes were "conspiring" with Defendants Morgan and Ambyth as early as January 2023 "to convert Silver Fern's business opportunities for their new venture with Ambyth." *Id*. ¶ 67. Plaintiff's evidence for this belief consists first of a January 18, 2023, instant message exchanged between Defendants Holmes and Kinto that apparently referred to an upcoming meeting with Defendant Morgan. *Id*. ¶ 70. On February 22, 2023, Defendants forwarded an email from Mr. Sam King, the President of Plaintiff, to their personal email accounts and Defendant Morgan. *Id*. ¶ 72. Finally, Defendants excluded a colleague, Ms. Esther Kannenberg, from a March 2023 sales conference dinner that Defendant Morgan attended. *Id*. ¶¶ 73–77. Plaintiff believes Defendants discussed at that dinner

1   their departure from Plaintiff as well as "their planned conversion" of confidential, proprietary,
2   and trade secret information. *Id*. ¶ 77.

3          Plaintiff further alleges that Defendants Lyons, Kinto, and Holmes began fostering
4   communications with clients in the few months leading up to their departure with the aim of
5   diverting business to Defendant Ambyth. *Id*. ¶¶ 78–90. Plaintiff alleges that Defendants tried to
6   "permanently delete" a large volume of emails from their work accounts, an act that Plaintiff
7   believes was an effort to conceal evidence of wrongdoing. *Id*. ¶¶ 91–96. Plaintiff alleges
8   Defendants accessed a variety of confidential information before their departure and also kept
9   notebooks and product samples with such information. *Id*. ¶¶ 102–112. Finally, Plaintiff alleges
10  that after Defendants had left the company, it received communications from customers intended
11  for Defendant Kinto but regarding orders with Defendant Ambyth. *Id*. ¶¶ 113–122. Plaintiff
12  asserts a "reasonable belief" that Defendants are using confidential information for their own
13  benefit, causing a loss of business and customer relationships. *Id*. ¶¶ 123–124.

14         Plaintiff now moves for a temporary restraining order ("TRO") to enjoin Defendants
15  from soliciting or contacting any of Plaintiff's current or former customers or vendors, to enjoin
16  Defendants from using or disclosing Plaintiff's confidential information, to order Defendants to
17  return all property belonging to Plaintiff, to order Defendants to provide a list of cell phones,
18  computers, or similar electronic devices in their possession and to present those devices for
19  forensic imaging, and to enjoin Defendants from deleting any data on those devices until they
20  can be forensically imaged. Dkt. No. 22 (sealed) at 3. Defendants oppose. *See* Dkt. No. 26.
21         As no reply brief is permitted under Local Civil Rule 65(b)(5), the Motion is fully briefed
22  and ripe for the Court's consideration.

23

24
ORDER DENYING MOTION
FOR TEMPORARY
RESTRAINING ORDER - 3

## II. LEGAL STANDARD

A TRO, as with any preliminary injunctive relief, is an extraordinary remedy that is "never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis for a TRO and a preliminary injunction are substantially identical), *overruled on other grounds by Winter*, 555 U.S. 7.

A party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the preliminary relief; (3) a balancing of equities tips in favor of the injunction; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20. All four *Winter* elements must be satisfied. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022); *see also Winter*, 555 U.S. at 20–22 (rejecting an approach that permitted mere "possibility" of irreparable harm if there is a strong likelihood of success on the merits). However, the Ninth Circuit permits a "sliding scale" approach as to the first and third factors: "[W]hen the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits,'" rather than showing a likelihood of success on the merits. *hiQ Labs, Inc.*, 31 F.4th at 1188 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011))); *Cottrell*, 632 F.3d at 1134–35 (holding that, after *Winter*, the "serious question" sliding scale survives in the Ninth Circuit, provided that the other two elements are also shown).

Injunctions requiring affirmative action are "particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Such injunctions require the moving party to establish "not simply that [it] is likely to succeed," but that "the law and facts *clearly favor* [its] position." *Garcia*, 786 F.3d at 740.

### III.  DISCUSSION

Plaintiff argues that it is entitled to a TRO because it meets all four *Winter* factors. Dkt. No. 22 (sealed) at 20–28. The Motion is accompanied by supporting declarations:

- The declaration of Sam King, the President of Plaintiff, which largely reiterates allegations in the Complaint, including background on Plaintiff's operations and the chemical distribution business. Dkt. No. 9 (sealed) ¶¶ 5–29. Mr. King states that Defendants diverted business to Defendant Ambyth even before leaving Plaintiff's employ by contacting customers and encouraging future communication with those customers. *Id*. ¶¶ 39–57. He also states that Defendants Lyons, Kinto, and Holmes accessed confidential and trade secret information, and that Plaintiff received communications from customers suggesting that Defendant Kinto had been diverting business to Defendant Ambyth. *Id*. ¶¶ 60–64, 66–67.

- The declaration of Karen Zell, the Controller of Plaintiff, which alleges that Defendants Lyons, Kinto, and Holmes accessed customer data and sales records between April 15 and April 17, 2023, after their effective final day of work on April 14, 2023. *See* Dkt. No. 10 (sealed).

- The declaration of Scott Polus, a Certified Computer Examiner and the Regional Vice President for Forensic Services for Consilio, LLC, which details the digital activity of Defendants Holmes, Lyons, and Kinto on Plaintiff's devices and accounts from January 17, 2023, to April 17, 2023. *See* Dkt. No. 11 (sealed). Mr. Polus states that Defendant Holmes deleted numerous items from his email account, deleted a Microsoft Teams message with Defendant Kinto, took numerous screenshots of company data, and accessed customer data after his last day of work. *Id*. ¶¶ 13–24. Defendants Lyons and Kinto also deleted numerous items from their email accounts and accessed data after leaving Plaintiff. *Id*. ¶¶ 25–36. There was no direct evidence of data exfiltration by Defendants Holmes, Lyons, or Kinto. *Id*. ¶¶ 16, 27, 33.

- The declaration of Bobbie Knight, an employee of Plaintiff, which states that product samples and notebooks were missing from Defendant Holmes's work area after he announced his resignation. Dkt. No. 5 ¶¶ 3–5.

- The declaration of Esther Kannenberg, the Supply Chain and Sourcing Manager at Plaintiff, which states that Defendants Kinto, Lyons, and Holmes met with Defendant Morgan over dinner at a sales conference in March 2023 and conspicuously did not include her in that dinner when she had otherwise accompanied them throughout the conference. Dkt. No. 6 ¶¶ 5–10.

Defendants oppose, arguing that the Motion should be denied because none of the *Winter* factors are satisfied. Dkt. No. 26 at 8. Specifically, Defendants argue: (1) Plaintiff has not shown

that the information at issue qualifies as trade secrets, that Defendants misappropriated the information, or that Defendants violated their confidentiality agreements; (2) Plaintiff has not shown that Defendants have used or have any intention to use confidential information such that irreparable harm would be inflicted; (3) the requested injunctive relief would harm Defendants; and (4) the TRO is not in the public interest because it limits market competition. *Id*. at 7–12. Defendants also provide declarations:

- The declaration of Defendant Scott Lyons, which acknowledges that he signed a Confidentiality Agreement with Plaintiff. Dkt. No. 27 ¶ 4. Defendant Lyons also states that he notified Plaintiff of his resignation on April 17, 2023, that he accessed files on April 14, 2023, to prepare active or potential deal files for Plaintiff going forward, and that he accessed his own sales records on April 15 and 16, 2023, to gather information to calculate his outstanding commission. *Id*. ¶¶ 7–9.

- The declaration of Defendant Troy Kinto, which acknowledges that he signed a Confidentiality Agreement with Plaintiff. Dkt. No. 28 ¶¶ 7–8. Defendant Kinto states that he accessed his own sales records on April 17, 2023, to gather information to calculate his outstanding commission. *Id*. ¶ 15. He states that he was contacted by Mr. Anthony Restivo, the owner of Streamliner Materials, which was not a customer of Plaintiff. *Id*. ¶¶ 18–19. He states that he has only contacted customers and vendors with whom he had contacts before starting work for Plaintiff, including Tata Chemicals North America and SA Services. *Id*. ¶¶ 23–24. Finally, he states that was contacted by Nouryon, a vendor of Plaintiff, but did not interfere with their business with Plaintiff. *Id*. ¶ 24.

- The declaration of Defendant King Holmes, which acknowledges that he signed a Confidentiality Agreement with Plaintiff. Dkt. No. 29 ¶ 4. He states that he visited his office on the weekend of April 15, 2023, to clean out his desk, including the disposal of chemical samples. *Id*. ¶ 8. He states that he accessed his sales records that weekend to gather information to calculate his outstanding commission and review potential wage theft. *Id*. ¶ 9. He states that he deleted emails as a means of clearing his workload and preventing the disclosure of personal information. *Id*. ¶ 10. He also states that he was contacted by customers to continue their relationship. *Id*. ¶ 14.

- The declaration of Defendant Rowland Morgan, which states that a good deal of information in the chemical distribution business, including the names of purchasing managers, vendors, the chemicals sold, and the purchase price, are available in public databases. Dkt. No. 30 ¶¶ 5–9. He states that Plaintiff's vendors and purchase history appear publicly available in at least one database. *Id*. ¶ 9. He also states that he offered employment to Defendants Holmes, Kinto,

and Lyons on March 25, 2023, an offer that was contingent on honoring all obligations to Plaintiff and any other employers. *Id.* ¶ 16.

- The declaration of Jennifer Berry, counsel for Defendants Lyons, Holmes, Morgan, and Ambyth, which states that she contacted Plaintiff on April 27, 2023, to request that Plaintiff cease and desist certain behaviors. Dkt. No. 31 ¶ 2. In response, Plaintiff did not raise concerns about confidential information or trade secrets. *Id.* ¶ 3.

The Court has reviewed the Parties' briefing, supporting declarations, and the remainder of the relevant record and finds oral argument unnecessary.

A.   **Likelihood of Success on the Merits**

Plaintiff requests a TRO based only on certain claims in its Complaint: (1) violations of the Washington Uniform Trade Secrets Act ("UTSA") and the federal Defend Trade Secrets Act ("DTSA"); (2) breach of common law duties of loyalty and confidentiality; and (3) breach of contract for violation of the confidentiality agreements.[1] Dkt. No. 22 (sealed) at 20–25. Plaintiff argues that it has established likelihood of success on the merits of these claims. *Id.* Defendants oppose. Dkt. No. 26 at 8–11.

Plaintiff has failed to show, at this early stage of the litigation, a likelihood of success on the merits. At the heart of Plaintiff's claims is the accusation that Defendants have (and will) use trade secrets and confidential information for their own benefit. But Plaintiff has failed to show a likelihood that Defendants have in fact engaged (or will engage) in such acts. Instead, Plaintiff's allegations are conclusory and speculative. For example, it is alleged "on information and belief" that Defendant Holmes deleted a Microsoft Teams message to Defendant Kinto "so that there would be no evidence of his collusion with Defendants Morgan and Ambyth" (*id.* ¶ 70); Plaintiff produces no evidence of actual collusion. It is also alleged "on information and belief" that

---

[1] Therefore, the Court will not address grounds for a TRO stemming from Plaintiff's claims of violations of the federal Computer Fraud and Abuse Act and tortious interference. Dkt. No. 7 (sealed) ¶¶ 130–133, 175–186.

Defendants "discussed their planned conversion of [Plaintiff's] confidential, proprietary, and trade secret information" over dinner at a sales conference (*id*. ¶ 76); Plaintiff produces no evidence of such a discussion or of the *actual* disclosure of confidential or trade secret information, instead relying on the specter of misconduct at a dinner where another employee was excluded. Defendants counter with explanations from Defendants Kinto, Lyons, and Holmes for the files they accessed in their final days at Silver Fern. *See* Dkt. Nos. 27–29. Defendants also provides copies of the employment agreements with Defendant Ambryth in which Defendants Kinto, Lyons, and Holmes all attested that they would neither remove proprietary material nor use confidential information from their former employer during the course of their employment with Ambryth. Dkt. No. 30 at 13, 16, 19.

Plaintiff further argues that it "appears" that "Defendants attempted to destroy significant amounts of evidence related to their wrongdoing before they left [Plaintiff]." Dkt. No. 7 ¶ 91. But Plaintiff produces no evidence of wrongdoing despite retaining a computer forensics expert who examined the computer devices used by Defendants Holmes, Lyons, and Kinto, and found that there was no direct evidence that any data had been exfiltrated, according to his declaration. *See* Dkt. No. 11. And while Plaintiff identified specific clients that conducted business with Defendant Kinto after he joined Defendant Ambyth, Kinto states in his declaration that he had relationships with those clients prior to working for Plaintiff or that he has not misappropriated information in developing other relationships. *See* Dkt. No. 28.

Of course, it is possible that discovery may prove otherwise regarding these claims, and any misrepresentations to the Court will be sanctioned as appropriate. But at this stage of the

litigation, Plaintiff has not shown a likelihood of success on the merits sufficient to warrant the extraordinary relief of a TRO.[2]

**B.      The Sliding Scale**

While the failure to show one *Winter* factor (here, a likelihood of success on the merits) would ordinarily defeat a TRO, it is possible under the "sliding scale" approach in the Ninth Circuit to nonetheless proceed if the balance of equities (the third *Winter* factor) tips *sharply* in Plaintiff's favor, provided that Plaintiff still demonstrates "serious questions going to the merits" as well as the two remaining *Winter* factors. *See Cottrell*, 632 F.3d at 1132. Here, however, the balance of equities does not tip in favor of Plaintiff.

In weighing the balance of the equities, courts look at the harm to the parties. Here, Plaintiff has not demonstrated any harm that it would suffer in the absence of a TRO that rises above the speculative level. Even if "Defendants have done business with several of [Plaintiff's] former customers and vendors" (Dkt. No. 22 (sealed) at 26), that does not necessarily support a finding that Defendants have misappropriated or disclosed any confidential information based upon the information provided. Plaintiff provides no evidence that even the speculative future loss of clients to Defendant Ambyth would be a significant loss, or that the loss of some clients to a competitor would be abnormal in the ordinary course of business. Defendant Kinto notes that "[i]n the business of commodity chemical sales, a customer can often have several different vendors for the same product, and it is common practice for a customer to jump from vendor to vendor to procure the same product depending on the customer's circumstances at the time." Dkt. No. 28 at 3–4. Plaintiff's application for relief is further undermined by the fact that it waited more than five weeks after Defendants ended employment with Plaintiff to file the instant motion.

---

[2] As Plaintiff fails on the first *Winter* factor, or likelihood of success on the merits, the Court does not reach the remaining factors other than in the context of the "sliding scale" analysis below.

On the other side of the scale, Defendants point out that a TRO would be "extraordinary relief" that would "interfere with Defendants' livelihood by prohibiting them from working with [Plainitff's] customers and vendors even though Defendants never agreed to noncompetition or nonsolicitation terms." Dkt. No. 26 at 12. Contrary to Plaintiff's assertion (Dkt. No. 22 (sealed) at 27), the requested TRO would cause harm. It would convert a confidentiality agreement into a noncompetition and nonsolicitation agreement that Plaintiff never asked of Defendants and for which Defendants were never compensated. *See* Dkt. No. 26 at 13–16.

Finally, the relief Plaintiff requests is relief that Defendants have represented in writing they will already provide or intend to comply with, is overbroad, or can be obtained in the normal course of discovery. Plaintiff requests the Court order five actions of Defendants (Dkt. No. 22 at 3):

1. *Restrain all Defendants from soliciting, contacting conducting business with or servicing any of Plaintiff's current or former customer or vendor.* This request is overbroad and would amount to a court-ordered nonsolicitation agreement as discussed above.

2. *Temporarily enjoin Defendants from using Plaintiff's confidential information.* Defendants have provided evidence that their current employment agreement already requires this and Defendants Kinto, Lyons, and Holmes have agreed to do so voluntarily.

3. *Order Defendants Kinto, Lyons, and Holmes to return all property belonging to Plaintiff.* Defendant Kinto readily admits that he is in possession of some materials, he always intended to send them back to Plaintiff, they are ready to send to Plaintiff, and he has not used any of the material to conduct business with Ambyth. Dkt. No. 28 ¶ 17. Defendant Holmes admits under oath that he took some chemical samples to the dump and the reasons he did so. Dkt. No. 20 ¶ 8. Again, this request seeks action that Defendants have already stated under penalty of perjury that they will take voluntarily.

4. *Order Defendants Kinto, Lyons, and Holmes to provide a list of their cellphones, computers or similar electronic devices and present them for forensic imaging on a schedule requested by Plaintiff.* This can be addressed in the normal course of discovery.

5. *Order Defendants Kinto, Lyons, and Holmes to not delete or attempt to delete data from their electronic devices.* This can be accomplished with a litigation hold or preservation letter which Plaintiff could have sent out once there was a prospect of litigation. *See, e.g.*, *James v. US Bancorp*, No. C18-1762, 2021 WL 1890787, at *6 (C.D. Cal. May 11, 2021) (holding that plaintiffs' preservation letter triggered a duty to preserve evidence); *see also Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("[T]rial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006))). Sanctions are available for violating such a hold. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) ("[A] district court can sanction a party who has despoiled evidence . . . .").

Plaintiff fails to show that the balance of equities tips in its favor, much less that the balance tips *sharply* in its favor, or that there is an immediate need for the requested relief.

## IV.   CONCLUSION

Accordingly, the Court DENIES Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 22 (sealed)).

Dated this 2nd day of June 2023.

Tana Lin
United States District Judge