UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SILVER FERN CHEMICAL, INC., a Washington corporation,<br><br>                    Plaintiff,<br><br>         v.<br><br>SCOTT LYONS, an individual; TROY KINTO, an individual; KING HOLMES, an individual; ROWLAND MORGAN, an individual; and AMBYTH CHEMICAL COMPANY, a Washington corporation,<br><br>                    Defendants. | CASE NO. 2:23-cv-00775-TL<br><br>ORDER ON MOTIONS TO SEAL |

This is an action for damages and injunctive relief for the misappropriation of trade secrets, breach of contract, and other related claims. This matter comes before the Court on Plaintiff's Motions to Seal (Dkt. Nos. 2, 39) and Defendants' Motion to Seal (Dkt. No. 33). Having reviewed the relevant record, the Court GRANTS in part and DENIES in part Plaintiff's motions and GRANTS Defendant's motion.

ORDER ON MOTIONS TO SEAL - 1

# I. BACKGROUND

The background of this matter is recounted in the Court's prior order denying Plaintiff's motion for a temporary restraining order ("TRO"). Dkt. No. 40 at 2–3. In sum, Plaintiff Silver Fern Chemical brings this action against three former employees—Defendants Scott Lyons, Troy Kinto, and King Holmes—and their new employer, Defendant Ambyth Chemical Company, operated by Defendant Rowland Morgan. Dkt. No. 7 at 1–2, 20. Plaintiff alleges that Defendants used Plaintiff's confidential and trade secret information for their own benefit and to interfere with Plaintiff's contractual relationships. *Id.* at 3.

In its first motion (Dkt. No. 2, supplemented by Dkt. No. 41), Plaintiff moves to seal, in whole or in part, a variety of materials associated with its TRO request, including: the Complaint (Dkt. No 7); the motion for TRO (Dkt. No. 22); the supporting declaration and exhibits of Sam King, the president of Plaintiff (Dkt. No. 9); the supporting declaration and exhibits of Karen Zell, the comptroller of Plaintiff (Dkt. No. 10); and the supporting declaration and exhibits of Scott Polus, a computer forensics expert (Dkt. No. 11). The types of information Plaintiff moves to seal include revenue and customer numbers, strategies used to obtain new business, customer identities and their requirements, and the structure of employee compensation. Defendants did not timely oppose, but now oppose "to the extent it seeks to seal the information at issue" in the second motion. Dkt. No. 42 at 3.

In its second motion (Dkt. No. 39), Plaintiff moves to redact similar information contained in Defendants' opposition to the motion for TRO (Dkt. No. 26) and supporting declarations from Defendants Scott Lyons (Dkt. No. 27), Troy Kinto (Dkt. No. 28), and King Holmes (Dkt. No. 29). Defendants oppose (Dkt. No. 42), and Plaintiff replied (Dkt. No. 46). The types of information Plaintiff moves to seal are similar to the information at issue in its first

1   motion, including customer and supplier identities, specific product transactions, and the
2   structure of employee compensation.
3       Finally, Defendants move to seal two exhibits (Dkt. Nos. 34–35) submitted with a
4   declaration from Defendant Rowland Morgan (Dkt. No. 30). Dkt. No. 33. These exhibits are
5   printouts from Datamyne, a database that compiles data from the U.S. International Trade
6   Commission ("USITC"). *Id.* at 2. Datamyne is accessible by subscription fee. *Id.* Plaintiff does
7   not oppose the motion. Dkt. No. 44.

8              II.   LEGAL STANDARD

9       There is a strong presumption of public access to court-filed documents. Local Civil Rule
10  ("LCR") 5(g); *accord Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).
11      A party seeking to seal records related to motions that are dispositive or otherwise "more
12  than tangentially related to the merits of a case" must "meet the high threshold of showing that
13  'compelling reasons' support secrecy." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d
14  1092, 1098–99 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1180. Courts generally consider the
15  complaint to be "dispositive" in this context. *See, e.g.*, *Williams & Cochrane, LLP v. Quechan*
16  *Tribe of Fort Yuma Indian Rsrv.*, No. C17-1436, 2017 WL 3600417, at *2 (S.D. Cal. Aug. 17,
17  2017) (denying *ex parte* motion to seal case). So, too, are motions for preliminary injunctive
18  relief. *See Ctr. for Auto Safety*, 809 F.3d at 1099–101.
19      "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and
20  justify sealing court records exist when such 'court files might have become a vehicle for
21  improper purposes,' such as the use of records to gratify private spite, promote public scandal,
22  circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting
23  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Even if compelling reasons are
24  identified, a sealing order must be narrowly tailored. *Kamakana*, 447 F.3d at 1182.

### III. DISCUSSION

As an initial matter, Plaintiff in its reply withdrew portions of its motions. Plaintiff now consents to unsealing the identity of its database eChempax and the alleged amount of outstanding sales by Defendant Kinto when he left Plaintiff. Dkt. No. 46 at 2. Plaintiff also consents to unsealing the amounts of money earned by Defendants Lyons, Kinto, and Holmes while working for Plaintiff. *Id.* at 7. Accordingly, this information shall be unsealed or unredacted.

### A.  Plaintiff's Motions to Seal

Insofar as Plaintiff moves to seal specific information that implicates its business interests yet is "'inconsequential to the merits of' the underlying dispute," Plaintiff stands on firm ground. *See Virun, Inc. v. Cymbiotika, LLC*, No. C22-0325, 2022 WL 17401698, at *3 (C.D. Cal. Aug. 19, 2022) (quoting *Houston Cas. Co. v. Cibus US LLC*, No. C19-0663, 2021 WL 4267406, at *3 (S.D. Cal. Sept. 20, 2021)). Such information includes customer identities and their associated needs and transactions. *See id.* ("Courts in this Circuit regularly grant applications to seal in order to protect the customers whose 'identities . . . are not generally known to the public' and who have 'an interest in maintaining their privacy.'" (quoting *Houston Cas. Co.*, 2021 WL 4267406, at *3)). It includes confidential financial information, like revenue. *See J.R. Simplot Co. v. Wash. Potato Co.*, No. C16-1851, 2016 WL 11066581, at *1 (W.D. Wash. Dec. 29, 2016) (sealing "confidential financial information" including "various debt ratios" and "a consolidated balance sheet"); *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. C17-1340, 2019 WL 6829886, at *1 (W.D. Wash. Dec. 13, 2019) (sealing "specific historical, present, and projected financial data"). It also includes the details of a compensation structure.[1] *See Kazi v. PNC, Bank,*

---

[1] Defendants argue that the Washington Equal Pay and Opportunity Act ("EPOA"), RCW 49.58 *et seq.*, prohibits an employer from deeming its employee wages to be confidential. Dkt. No. 42 at 9. Plaintiff responds that "the amount of money [Defendants] made at [Plaintiff] is a separate inquiry from the manner in which their commissions were

ORDER ON MOTIONS TO SEAL - 4

*N.A.*, No. C18-4810, 2020 WL 12862940, at *1 (N.D. Cal. Jan. 22, 2020) ("[Defendant] has shown compelling reasons to seal the particular technical details of its compensation structure to avoid competitive disadvantage . . . ."); *Gomo v. NetApp, Inc.*, No. C17-2990, 2019 WL 1170775, at *2 (N.D. Cal. Mar. 13, 2019) (sealing documents containing details regarding compensation structure).

Plaintiff has demonstrated compelling reasons to seal a large portion of the information it identifies. *See Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 5476846, at *1 (W.D. Wash. Nov. 12, 2012) ("'[C]ompelling reasons' may exist if sealing is required to prevent judicial documents from being used 'as sources of business information that might harm a litigant's competitive standing.'" (quoting *In re Elec. Arts*, 298 F. App'x 568, 569–70 (9th Cir. 2008))). As Plaintiff explains, its "customer and vendor lists derive their value from their confidentiality." Dkt. No. 46 at 3 (citing Dkt. No. 9 ¶¶ 27–29). Plaintiff states that it invested a great deal of resources to collect and store this information, and disclosure would result in a loss of that investment. *Id*. (citing Dkt. No. 9 ¶¶ 22–24, 27–29, 59). Defendants miss the mark when they protest that Plaintiff lists the chemicals it sells on their website (Dkt. No. 42 at 7), or when they assert general characteristics of the chemical distribution industry (*id.* at 8): The value of the information at issue is the connection between customers and specific chemicals, and Defendants do not show that the information at issue is publicly available or widely known.[2] As Plaintiff

---

determined." Dkt. No. 46 at 7. Further, Plaintiff no longer seeks to seal the amounts of money earned by Defendants Lyons, Kinto, and Holmes while working for Plaintiff. Dkt. No. 46 at 7.

[2] Curiously, Defendants cite Datamyne as evidence that certain information is "publicly available" and thus not proper for sealing. Dkt. No. 42 at 8. Yet Defendants move to seal information taken from Datamyne, admitting that the information is only available to Defendants' declarant because he pays a subscription fee for it. Dkt. No. 33 at 2 ("It might be seen as unfair to Datamyne to place [the information] in the public record, where other people, who have not paid the subscription fee [for Datamyne], would have access to them."). Further, Plaintiff affirms that its information is not even available on Datamyne, as they have taken steps to keep their USITC data confidential. *See* Dkt. No. 46 at 5; Dkt. No. 46-1 (King declaration).

states, "Simply calling it 'widely known' does not make it so, and Defendants have provided no evidence that it is." Dkt. No. 46 at 6.

At the same time, Plaintiff frequently sweeps too broadly where a more targeted approach would suffice to protect its interests while maximizing the public's access to and understanding of the instant matter. *See Hesche v. NXP USA Inc.*, No. C19-5268, 2020 WL 8461529, at *1 (D. Ariz. Oct. 30, 2020) ("[T]he Court will not seal a document in its entirety when only a portion of the document contains material that satisfies the applicable legal standard for sealing."); *cf. Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) ("[T]he limited number of third-party medical and personnel records can be redacted easily to protect third-party privacy interests while leaving other meaningful information. . . . We do not see how the presence of a small number of third-party privacy interests that can be redacted with minimal effort constitutes 'good cause,' let alone a compelling reason, . . . to overcome the strong presumption in favor of public access.").

Broad redactions are often found in the Complaint (Dkt. No. 7), the Motion for TRO (Dkt. No. 22), and the King Declaration (Dkt. No. 9). For example, Plaintiff moves to seal a list of "databases and information" that it maintains as "confidential" (Dkt. No. 7 at 15-18; Dkt. No. 9 at 8-11), but the list is almost entirely comprised of generically stated categories of information, not the information itself. In another example, Plaintiff moves to seal the details of an alleged instance of misappropriation by Defendant Kinto (Dkt. No. 7 at 34–36; Dkt. No. 22 at 17–18), but whole sentences or paragraphs are redacted where narrow redactions of names and other identifying details would suffice.

Sometimes, Plaintiff sweeps so broadly that nothing remains. For example, Plaintiff moves to seal the *entirety* of the Polus Declaration, which details evidence regarding the computer activity of Defendants Lyons, Kinto, and Holmes, and is thus consequential to the

ORDER ON MOTIONS TO SEAL - 6

merits of the underlying dispute. Dkt. No. 11. To be sure, the declaration may contain information, like customer identities, that is properly sealed on its own. But Plaintiff does not propose targeted redactions, nor does it explain why the entire declaration needs to be sealed. Similarly, Plaintiff moves to seal the brief Zell Declaration (Dkt. No. 10) but does not explain why it needs to be completely sealed rather than redacted in part. Plaintiff also moves to seal all exhibits to various declarations in support of its TRO, even where nearly the entire contents of an exhibit were publicly revealed in another filing.[3] For example, in the Complaint, Plaintiff asserts that on March 9, 2023, "Defendant Kinto emailed [a] customer and asked her to 'Please give me a call on this. . .Call my cell phone number.' The customer responded that she was in a meeting but would 'give [him] a call shortly.'" Dkt. No. 1 ¶ 81. But these emails, which are attached as exhibits to the King Declaration (Dkt. Nos. 9-24, 9-25), are filed completely under seal (Dkt. Nos. 4-24, 4-25) when only the customer's identity should be redacted.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's motions. Plaintiff is ORDERED to review and refile the documents with appropriate, targeted redactions in accordance with this Order.

**B.  Defendants' Motion to Seal**

The materials at issue that Defendants seek to seal (Dkt. Nos. 34–35) contain information from Datamyne, a subscription database that belongs to a non-party to this matter. The information is not publicly available (unless someone pays for access) and derives independent economic value from its exclusivity. *See, e.g.*, *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, No. C19-8098, 2020 WL 6562333, at *5 (N.D. Cal. Nov. 9, 2020) (finding that plaintiff adequately pleaded that its subscription-only database qualified for trade secret protection).

---

[3] A cursory review reveals that at least some of the exhibits are appropriately sealed in their entirety, but the Court will not pick through each exhibit to check for its appropriateness. That burden remains on Plaintiff.

Moreover, while not dispositive, the Court observes that the Parties agree that this information should be sealed in light of its sourcing from Datamyne. Dkt. Nos. 33, 44. The Court agrees and therefore GRANTS the motion.

### IV. CONCLUSION

Accordingly, the Court rules:

(1) Plaintiff's Motions to Seal (Dkt. Nos. 2, 39) are GRANTED in part and DENIED in part. Plaintiff is ORDERED to file, **within thirty (30) days** of this Order, redacted versions of the Complaint (Dkt. No. 7), Motion for TRO (Dkt. No. 22), King Declaration (Dkt. No. 9), Zell Declaration (Dkt. No. 10), Polus Declaration (Dkt. No. 11), and all exhibits in accordance with this Order.

(2) Defendants' Motion to Seal (Dkt. No. 33) is GRANTED.

Dated this 19th day of July 2023.

Tana Lin
United States District Judge