Honorable Tana Lin

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SILVER FERN CHEMICAL, INC., a
Washington corporation,

                Plaintiff,

     v.

SCOTT LYONS, an individual, TROY KINTO,
an individual, KING HOLMES, an individual,
ROWLAND MORGAN, an individual, and
AMBYTH CHEMICAL COMPANY, a
Washington corporation,

                Defendants.

NO. 2:23-cv-00775-TL

**STIPULATED ESI AGREEMENT
AND ORDER**

The Parties have stipulated to the following provisions regarding the discovery of

electronically stored information ("ESI") in this matter (Dkt. No. 66):

A.     **General Principles**

     1.     An attorney's zealous representation of a client is not compromised by

conducting discovery in a cooperative manner. The failure of counsel or the parties to

litigation to cooperate in facilitating and reasonably limiting discovery requests and responses

raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.      ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.      <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, the type of the information under the custodian's control, and the likely custodial sources of the custodian's ESI (including, for example, hard drive, laptops, and mobile devices). If a requesting party determines that additional Custodians should be added, then the requesting party shall advise the producing party in writing of the proposed additional Custodians and the basis for the request.

2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI. The producing party will identify the databases that are likely to contain discoverable "structured data."

3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.      <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically

identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). The parties agree to take reasonable steps to preserve inaccessible discoverable data that is known to the preserving party and which is under the preserving party's custody or control until the parties meet and confer about whether such data shall be preserved.

**C.    ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.    Prior to running searches:

i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party will provide a hit count  for each search term, search string, or query, and the parties will reach an agreement on the search terms, search strings, or queries to be used before the producing party produces documents hitting on those search terms, search strings, or queries.

ii.    After disclosure, if the requesting party believes, in good faith, that the search terms, search strings, or queries agreed to by the parties pursuant to Section

C(2)(a) are insufficient, the parties shall meet and confer in order to reach an agreement on additional search terms, search strings, or queries and/or other methodology.

iii.     The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

b.     Known responsive ESI: ESI that is known to a party to be responsive to a discovery request or subject to disclosure under Federal Rule of Civil Procedure 26(a)(1)(A) may not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Agreement. Discrete folders or collections of documents that are identified by a custodian as likely to be responsive will be collected and preserved pursuant to standard business practices and processes that are reasonably designed to ensure all potentially responsive documents are identified and collected.

3.     Format.

a.     Unless otherwise specified in a particular discovery request consistent with FRCP 34(b)(2)(D), the parties agree that ESI will be produced to the requesting party with searchable text, in a format described below. If a party serves a request specifying a

particular form or forms in which electronically stored information is to be produced, this section will apply to the extent it is not inconsistent with the form specified in the request.

b.    Each document image file shall be named with a unique number (Bates Number). Parties will take reasonable steps to ensure that file names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

c.    All productions shall be encrypted. Any production made via FTP should be provided as compressed archives (ZIP or RAR files). Productions over 5GB may be produced via FTP by splitting the compressed archives into 5GB or less or on encrypted physical media, such as hard drive or flash drive.

d.    Responsive spreadsheets (e.g., Excel files), audio files, and video files shall be produced in native format. The parties will meet and confer to discuss requests for the production of other files in native format on a case-by-case basis. All native documents will be accompanied by single-page TIFF files that are sequentially Bates numbered and include any applicable confidentiality language pursuant to any Protective Order entered in this litigation, companion searchable text files (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and companion data load files for commonly-used e-discovery software. The native file name shall include the accompanying image files' first Bates Number. To the extent that documents produced in native format cannot be rendered or viewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues that may arise with respect to obtaining access to any such software or operating manuals.

(i)      If the ESI is not amenable to being imaged, it shall be produced only in its original, native, unaltered format, along with a spacer image sheet that: (1) indicates that the file was produced as a native file; and (2) is marked with a Bates production number. That Bates production number will be the production number of the corresponding native file. The native file name shall include this Bates production number.

(ii)      If production of a particular document as a native format file would result in the disclosure of information protected by the attorney-client privilege, the work-product doctrine, or that is otherwise protected from discovery, the producing party may object to its production as a native file and produce the document at issue with redactions in sequentially Bates numbered, static image format (with companion text and load files as described above). Wherever possible, the remainder of the document should be produced in native (for example, Excel spreadsheet portions that need not be redacted).

e.      All e-mails and other documents not being produced in native format should be produced as single-page TIFF files that are sequentially Bates numbered and include any applicable confidentiality language pursuant to any Protective Order entered in this litigation, companion searchable text files (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and companion data load files for commonly-used e-discovery software.

f.      Non-standard electronic files include, but are not limited to, source code, transactional data, database files, audio and video files, and proprietary applications not publicly available. The producing party will take reasonable steps to produce documents from

such sources in a reasonably usable format with appropriate metadata in line with how the information is kept in the usual course of business. If after reviewing the produced documents a receiving party raises a specific issue or concern about a produced document or data, the parties will meet and confer regarding whether an alternative form of production or additional metadata is necessary or appropriate.

g.      Paper documents amenable to being imaged will be produced as single-page TIFF files that are Bates numbered and include any applicable confidentiality language pursuant to any Protective Order entered in this litigation, with companion searchable text files (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and with companion data load files for commonly-used e-discovery software. In addition, paper documents that are in color need not be produced in color initially. However, the parties reserve the right to seek in good faith replacement images containing color in *.jpg format where applicable. Physically oversized originals, however, may be reduced provided that such reduction does not obscure any text or otherwise make the document unreadable. In addition, reducing an image may be necessary to display production numbers and confidentiality designations without obscuring the text. The parties agree not to degrade the searchability of documents as part of the document production process. If a party desires additional information about a particular paper document produced in this form, the parties will meet and confer regarding the appropriate means to supply that information. Paper documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable.

i.    The following metadata fields will be produced for each non-privileged

responsive document to the extent that such information is available at the time of collection

and processing. If no data exists for a particular field, the producing party may leave the field

blank.

| Provided for all records: | |
| --- | --- |
| ProdBeg | |
| ProdEnd | |
| ProdBegAttach | |
| ProdEndAttach | |
| ParentBates | First Bates number of parent document/Email. **This ParentBates field should be populated in each record representing an attachment "child" document. |
| ChildBates | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments. **The ChildBates field should be populated in each record representing a "parent" document |
| Custodian | |
| All Custodians | Populated with names of all custodians for whom the document was |
| File_Extension | |
| MD5Hash | |
| FilePath | Starting with container name (PST or NSF) through mailbox folder name. |
| Record Type | Populated with Email, Attachment, or Loose File. |
| NativePath | Relative path to native file if provided in production. |
| TextPath | Relative path to document text/OCR file if provided in production. |
| Provided for Email: | |
| SentDate | Format yyyy/mm/dd hh:mm:ss UTC |
| ReceivedDate | Format yyyy/mm/dd hh:mm:ss UTC |
| From | |
| To | |
| CC | |
| BCC | |
| Subject | |
| ThreadID | Email thread identification value (ConversationIndex or other identifier) |
| Attachment Names | File names of attached documents |
| Num_Attachments | Number of attached documents |
| Redaction | Populated with "Yes" or "Has Redactions" for the documents containing redactions. |
| Confidentiality | Populated with the Confidentiality designation of the document. If a document does not have a Confidentiality designation, this field can be left blank. |
| Provided for Edocs (including attachments to email): | |
| Author | |

| | |
|---|---|
| CreateDate | Format yyyy/mm/dd hh:mm:ss UTC |
| ModDate | Format yyyy/mm/dd hh:mm:ss UTC |
| DocTitle | |
| FileName | |
| FileSize | |
| Paper Document Fields: | |
| ProdBeg | |
| ProdEnd | |
| ProdBegAttach | |
| ProdEndAttach | |
| Custodian | |

4.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

5.    <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.      The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)–(2)).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by forensics.

b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (C)(3)(i)).

e.    Back-up data that are duplicative of data that are more accessible elsewhere.

f.    Server, system or network logs.

g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

h.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.      Privilege**

1.      A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order.

2.      The parties agree that, unless good cause exists to require a party to do so, they need not log the following:

(a) information or communications shared exclusively between a producing party and its outside counsel, or an agent of outside counsel, after the filing of the Complaint;

(b) information or communications shared with any non-testifying experts in connection with specific litigation; or

(c) information, documents, or communications protected by Federal Rule of Civil Procedure 26(b)(4).

3.      Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. A party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided as the basis for the claim. Parties will

Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery unless an earlier deadline is agreed to by the parties.

4.      Redactions need not be logged so long as the basis for the redaction is clear on the redacted document and the nature of the privilege asserted is noted on the face of the document.

5.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

6.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

7.      A Party may not redact information on the basis it believes such information to be irrelevant or non-responsive.

8.      A party that withholds any document entirely on the basis of privilege shall produce a Bates numbered placeholder page/slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." Slip sheets for withheld documents need be produced only for partially-privileged families, where the producing party asserts privilege over a portion but not all of the responsive documents in the family. Slip sheets need not be produced for fully privileged document families.

9.      Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is

1    protected as privileged or work product shall be immediately returned to the producing party,

2    and its production shall not constitute a waiver of such protection.

3        It is so ORDERED.

4        DATED: November 16, 2023

5        _____

6        Tana Lin
         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED ESI AGREEMENT
AND ORDER - 13
(NO. 2:23-cv-00775-TL)