UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SILVER FERN CHEMICAL, INC., a Washington corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>SCOTT LYONS, an individual; TROY KINTO, an individual; KING HOLMES, an individual; ROWLAND MORGAN, an individual; and AMBYTH CHEMICAL COMPANY, a Washington corporation,<br><br>                Defendants. | CASE NO. 2:23-cv-00775-TL<br><br>ORDER ON MOTION FOR PROTECTIVE ORDER |

      This is an action for damages and injunctive relief for the misappropriation of trade secrets, breach of contract, and other related claims. This matter comes before the Court on Defendants' Motion for Protective Order. Dkt. No. 110. Having reviewed the motion, Plaintiff's response (Dkt. No. 114), Defendants' reply (Dkt. No. 116), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Defendants' motion with leave to refile.

# I. BACKGROUND

At issue in this motion are three emails (including a single attachment to each email) that consist of (1) a cover email and substantive memorandum sent by Defendant King Holmes to counsel Jennifer C. Berry on May 25, 2023, (2) a duplicate set of the same aforementioned email and attached memorandum, and (3) an email from Defendant Rowland Morgan forwarding the same email and attached memo to his wife, Laura Hanson, at her work email address (domain @windermere.com) (collectively, "the Disputed Documents"). Dkt. No. 110 at 3. Defendants bring the instant motion for a protective order: (1) compelling Plaintiff to return or destroy the Disputed Documents; (2) prohibiting Plaintiff from using or disclosing the information contained in these communications for any purpose; and (3) quashing Plaintiff's subpoena to Windermere Real Estate Company. *Id.* at 13. Defendants also seek their costs for bringing the motion. *Id.*

# II. DISCUSSION

A.  **Motion for Protective Order**

   1.  **Attorney-Client Privilege**

There is no dispute that the emails and attachment at issue are attorney-client privileged. Dkt. No. 114 at 9. The only question is whether the privilege has been waived by the disclosure of the Disputed Documents by Defendant Morgan to his wife at her work email address. *Id.*

"To qualify for attorney-client privilege, a communication must be made in confidence. The presence of a third person during the communication waives the privilege, unless the third person is necessary for the communication, or has retained the attorney on a matter of 'common interest.'" *Morgan v. City of Fed. Way*, 166 Wn.2d 747, 757, 213 P.3d 596 (2009) (internal citations omitted) ("Therefore, Judge Morgan waived attorney-client privilege when he forwarded his e-mail to a third party."). "Federal courts evaluating whether an employee has waived the attorney-client privileged status of personal communications transmitted, stored, or

saved onto a company computer or laptop, have applied the four-factor test initially set forth in *In re Asia Global,* 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1108–09 (W.D. Wash. 2011); *see also In re Rsrv. Fund Sec. & Derivative Litig.,* 275 F.R.D. 154, 159–60 (S.D.N.Y. 2011) (describing *Asia Global* as "widely adopted" and listing myriad cases). The *Asia Global* factors are: (1) does the company maintain a policy banning personal or other objectionable use; (2) does the company monitor the use of the employee's computer or email; (3) do third parties have a right of access to the computer or emails; and (4) did the corporation notify the employee, or was the employee aware, of the policy. *Asia Global,* 322 B.R. at 257.

Defendants have provided a declaration from Laura Smith, the co-owner of the Windermere office for which Ms. Hanson is an independent contractor, stating her office: does not prohibit independent contractors from using their Windermere email address for personal use, does not maintain the ability to monitor or review independent contractor emails, does not grant third parties the right to access independent contractor emails, and has not communicated to its independent contractors any policies that would prohibit them from using their Windermere email account for personal use. Dkt. No. 112 ¶¶ 4–7. However, Plaintiff has provided a declaration stating that a discussion with Windermere Real Estate Company's counsel revealed that the franchisee office co-owned by Ms. Smith may not be the entity that controls the use of the @windermere.com email address or policies related to the use of that domain. Dkt. No. 115 ¶ 29. Plaintiff believes that the franchisor Windermere Real Estate Company is the likely entity with those emails and policies. *Id.* Plaintiff argues that without being able to clarify or confirm

this information, the Court lacks the evidence it needs to evaluate whether the privilege has been waived. The Court agrees and thus RESERVES decision on this issue.[1]

Having reviewed the subpoena (Dkt. No. 112-1), the Court also finds that Plaintiff's subpoena to Windermere Real Estate Company is narrowly tailored to obtain the information necessary to properly evaluate the privilege issue. Therefore, the Court will not quash the subpoena.

### 2. Work Product

Defendants also argue that the memorandum written by Defendant Holmes is protected under the work-product doctrine. *See* Dkt. No. 110 at 10–11. Defendants assert that "Mr. Holmes's memorandum reflects communications specifically intended for his attorneys' review in the context of this litigation. The memorandum clearly demonstrates his 'mental impressions, conclusions, [and] opinions' as a named party to this litigation. [ ] The purpose of this document is immediately obvious on its face: to assist his attorneys in preparing this case for trial." *Id.* at 11 (internal citation omitted). Plaintiff neither responds to Defendants' assertion of work-product protection nor disputes Defendants' description of the memo. *See generally* Dkt. No. 114. The Court views this silence "as an admission that the motion has merit." Local Civil Rule 7(b)(2).

"The work-product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)); *see also* Fed. R. Civ. P.

---

[1] Defendants also raise that the documents are privileged under Federal Rule of Evidence 502 because the disclosure to Plaintiff was inadvertent, they took reasonable steps to prevent disclosure, and they promptly took reasonable steps to rectify their error. Dkt. No. 110 at 4; Dkt. No. 116 at 3. However, Plaintiff has not argued that Defendants' inadvertent disclosure to Plaintiff results in the waiver of the privilege. The issue is the disclosure to a potential third party, Windermere Real Estate Company, which was intentional on the part of Defendant Morgan and not inadvertent. Therefore, Rule 502 would not apply in any event.

ORDER ON MOTION FOR PROTECTIVE ORDER - 4

26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case' . . . ." *Sanmina Corp.*, 968 F.3d at 1119 (quoting *United States v. Nobles*, 422 U.S. 225, 238–39 (1975)).

"The privilege derived from the work product doctrine is not absolute. Like other qualified privileges, it may be waived." *Sanmina Corp.*, 968 F.3d at 1119 (quoting *Nobles*, 422 U.S. at 239). However, "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *Id.* at 1121 (quoting 8 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2024 (3d ed. 2020)). "Put another way, disclosing work product to a third party may waive the protection where 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *Id.* (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. 2001)). "Under this standard, the voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material." *Id.* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010)). *See also Taneja v. Freitas*, No. C22-702, 2023 WL 3619017, at *3 (W.D. Wash. May 24, 2023) (finding materials protected by work-product doctrine where materials were disclosed to co-plaintiffs).

Further, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product." *Caldwell v. Brown*, No. C09-1332, 2010 WL 1837717, at *1 (W.D. Wash. May 3, 2010) (quoting *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)); *see also* Wright & Miller § 2023 ("[T]he courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the

persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.").

Here, there is no dispute that the Holmes memorandum is a "document" prepared by Defendant Holmes, who is a "party" to this litigation. *Sanmina*, 968 F.3d at 1119; Fed. R. Civ. P. 26(b)(3)(A); *see also Arfa v. Zionist Org. of Am.*, No. C13-2942, 2014 WL 815496, at *3 (C.D. Cal. Mar. 3, 2014) ("The work product doctrine protects documents created by an attorney and may protect documents created by an agent or client of an attorney as well."). Defendant Morgan sending the document to his wife (even at her work email address) is not a disclosure to an adversary and does not "substantially increase[ ] the opportunities for potential adversaries to obtain the information." *Id.* at 1121. However, the Court does not have enough information to determine whether (or what parts of) the Holmes memorandum was "prepared in anticipation of litigation or for trial" or possibly includes underlying facts that are not subject to protection, as neither Party has presented the documents to the Court. *Id.* Therefore, the Court RESERVES decision on this issue as well, and will order the Parties to meet and confer regarding whether the entirety of the Holmes Memorandum is subject to the work-product doctrine, consistent with the guidance provided in this Order.

**B.      Request for Costs**

The Court finds that the gold standard would have been for Plaintiff's counsel to alert Defendants' counsel about the Disputed Documents which "unmistakably reflect[ed] communications between Defendants and their counsel," (Dkt. No. 110 at 7) but inform them of their reasons for believing that that any privilege had been waived. However, not much time had passed between the time Plaintiff received the documents and Defendants requested their return, Plaintiff did not know that Ms. Hanson was Defendant Morgan's wife until informed by counsel, and Plaintiffs complied with Federal Rule of Civil Procedure 26(b)(5)(B) when they sequestered

the documents rather than returning them upon demand. For these reasons, and because the Court is denying Defendants' motion in large part, the Court will not award costs.

### III. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Finding the Court lacks the necessary information to properly evaluate attorney-client privilege and work-product protection, the Court DENIES Defendants' motion for a protective order. However, the Court GRANTS Defendants leave to refile their motion for protective order, if appropriate after meeting and conferring with Plaintiff regarding any documents produced by Windermere Real Estate Company and the submission of any additional evidence. Should the parties be unable to independently resolve the issue, they SHALL follow the procedure set forth in Local Civil Rule 37(a)(2) for any subsequent motion regarding the Disputed Documents.

(2) The Court GRANTS IN PART and DENIES IN PART Defendants' request with regard to the Disputed Documents. Plaintiff may retain the Disputed Documents at this time so long as they sequester the documents. However, the Court GRANTS Defendants' request that Plaintiffs be prohibited from using or disclosing the information contained in the documents for any purpose until the final resolution of the confidentiality issues surrounding them.

(3) The Court DENIES Defendant's request to quash Plaintiff's subpoena to Windermere Real Estate Company.

(4) The Court DENIES Defendants' request for costs.

Dated this 15th day of July 2024.

Tana Lin
United States District Judge