1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11  SILVER FERN CHEMICAL, INC., a
    Washington corporation,

12
                        Plaintiff,

13            v.

14  SCOTT LYONS, an individual; TROY
    KINTO, an individual; KING HOLMES, an
15  individual; ROWLAND MORGAN, an
    individual; and AMBYTH CHEMICAL
16  COMPANY, a Washington corporation,

17                      Defendants.

18  SCOTT LYONS, an individual, and KING
    HOLMES, an individual,

19
                 Counterclaim Plaintiffs,

20            v.

21  SILVER FERN CHEMICAL, INC., a
    Washington corporation; SAM KING, an
22  individual; and LISA KING, an individual,

23               Counterclaim Defendants.

24

CASE NO. 2:23-cv-00775-TL

ORDER ON MOTION FOR
SANCTIONS AND MOTION TO
SEAL

This matter is before the Court on Plaintiff's Motion for Sanctions (Dkt. No. 124 (sealed), 125 (redacted)) and Plaintiff's Motion to Seal (Dkt. No. 123). Having reviewed the Parties' briefing and the relevant record, the Court GRANTS the Motion for Sanctions, GRANTS IN PART and DENIES IN PART the Motion to Seal, and RESERVES decision on Plaintiff's request to reconsider this Court's Order on Plaintiff's motion for TRO.

## I.  BACKGROUND

The Court assumes general familiarity with the facts of the case. Relevant to the instant motion, Plaintiff filed a motion for a temporary restraining order ("TRO") at the outset of this case. Dkt. Nos. 3, 22 (sealed). In opposition to the motion, Defendants submitted a variety of declarations, including one from Defendant King Holmes. Dkt. Nos. 29 (sealed), 76. In that declaration, Defendant Holmes stated, "Any of the deals I've put together after moving to [Defendant] Ambyth are a result of customers reaching out to me to request we continue our relationship." Dkt. No. 29 ¶ 14. The motion was ultimately denied. Dkt. No. 40.

Later, Defendant Holmes was deposed as part of discovery. Dkt. No. 127-1 (transcript of Holmes deposition) (sealed). In the deposition, Defendant Holmes stated that he contacted multiple customers after his departure from Plaintiff and engaged or attempted to engage in business transactions. *See* Dkt. No. 124 at 5–7. In one exchange, Defendant Holmes addressed the alleged discrepancy between his testimony and his TRO declaration:

> Q.    You wrote: 'Any of the deals I've put together after moving to Ambyth are a result of customers reaching out to me to request we continue our relationship.' Did I read that correctly?
>
> A.    You did.
>
> Q.    Mr. Holmes, didn't you just tell me that that's not true?
>
> A.    I did. I reached out to a number of them.

Q.      So this document you signed under penalty of perjury was inaccurate?

A.      Yeah. I should not have phrased it that way.

Dkt. No. 127-1 (sealed) at 10 (150:17–151:5). Later, Defendant Holmes filed a supplemental declaration in which he stated that he "intended to convey" that any deals after moving to Defendant Ambyth are a result of customers "electing to continue our relationship." Dkt. No. 117 ¶ 5. Defendant Holmes further stated that "I notified many business contacts of my departure from [Plaintiff] Silver Fern the same day I resigned and did not mean to imply otherwise in my Declaration." *Id.*

Plaintiff now brings the instant motion for sanctions, as well as a motion to seal the motion for sanctions. Dkt. Nos. 124 (sealed), 125; Dkt. No. 123. Defendants oppose. Dkt. Nos. 138 (sealed), 137; Dkt. No. 136. In its motion, Plaintiff also asks the Court to reconsider its Order on Plaintiff's motion for TRO in light of the instant motion. Dkt. No. 124 at 11–14.

## II.   MOTION FOR SANCTIONS

### A.   Legal Standard

A court may impose sanctions on a party or its counsel by three primary means: (1) Federal Rule of Civil Procedure 11, which applies to signed, written filings; (2) 28 U.S.C. § 1927, which penalizes unreasonable and vexatious multiplicity of proceedings; and (3) the inherent power of the court. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). Under its inherent powers, a court may "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*,

501 U.S. 32, 44–45 (1991). "A district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (citing *F.J. Hanshaw Enterps., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)). These sanctions may be levied for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Fink*, 239 F.3d at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (holding that a finding of bad faith is required to impose sanctions under a court's inherent powers).

**B.    Discussion**

Plaintiff moves for sanctions in the form of attorney fees, based on the inherent power of the court. Dkt. No. 124 at 10. Plaintiff argues that but for Defendant Holmes's false statements to the Court, it would not have had to expend fees to bring the instant motion. *Id.* Defendants respond that Defendant Holmes did not act in bad faith. *See* Dkt. No. 138 at 9–13.

Here, the Court will grant the motion and award Plaintiff the attorney fees associated with bringing this motion. In their response to Plaintiff's motion for TRO, Defendants made various representations that they abided by their Confidentiality Agreement, and they specifically distinguished the Confidentiality Agreement from a non-solicitation or non-competition agreement. *See, e.g.*, Dkt. No. 26 (sealed) at 9–11, 13–17. Indeed, one section of their response is titled in bold lettering, "Lyons, Holmes, and Kinto Did Not Breach Their Confidentiality Agreement," faulting Plaintiff for citing no evidence in support of its assertion that the men brought confidential customer information to Defendant Ambyth. *Id.* at 11. In short, Defendants were acutely aware that whether they had violated the Confidentiality Agreement was one of the issues at the heart of the case and the request for TRO. Then, in support of their opposition to

1   Plaintiff's request, Defendant Holmes provided a declaration in which the concluding statement

2   asserted (and the Court interpreted his statement as meaning) that customers initiated contact

3   with him, not that he reached out to them (as he actually did), which would have implicated him

4   using potentially confidential information he obtained while working at Silver Fern. *See* Dkt.

5   No. 29 (sealed) ¶ 14.

6          In totality, Defendants intentionally created the wrong impression that customers

7   affirmatively reached out to Defendant Holmes to continue business, not the other way around,

8   thus avoiding any confidentiality issues. Defendant Holmes conceded as much in his deposition

9   when he agreed that his declaration statement was "inaccurate" and acknowledged that he

10  "should not have phrased it that way." Dkt. No. 127-1 at 10 (151:1–5). Defendant Holmes also

11  admitted that he affirmatively reached out to a number of Plaintiff's clients. Dkt. No. 127-1 at 6

12  (103:5–104:6), 8 (142:13–23, 143:22–144:1), 9 (146:12–23, 147:9–148:16). In one of the more

13  egregious examples, Defendant Holmes admitted not only reaching out to one of Plaintiff's

14  clients on his first day working for Defendant Ambyth, but also making a deal with that customer

15  the same day. *Id.* at 9 (147:9–148:2, 148:9–14).

16         The Court finds that Defendants acted in bad faith in misleading the Court as to

17  Defendant Holmes's behavior. The Court further finds that the misrepresentation was material

18  because it improperly shaded the Court's understanding of a core issue at the TRO stage and

19  impacted the final outcome.[1] *See Guerra v. United States*, 75 F. Supp. 3d 1276, 1281 (W.D.

20  Wash. 2014) ("[A]n attorney's reckless misstatements of law and fact may be sanctionable when

21

22

23

24

---

[1] Illustrative of Defendants' shading of reality is their claim that Plaintiff "fabricate[d]" statements by Defendant Holmes, when Plaintiff plainly described what Defendant Holmes "effectively" argued in his declarations. *Compare* Dkt. No. 138 at 13, *with* Dkt. No. 125 at 14.

1   coupled with an attempt to influence or manipulate proceedings to gain a tactical advantage.").

2   Therefore, Plaintiff's Motion for Sanctions is GRANTED.

3   **III.    MOTION TO RECONSIDER**

4   **A.    Legal Standard**

5   "Motions for reconsideration are disfavored." LCR 7(h)(1). Such motions must be denied

6   absent a showing of "manifest error in the prior ruling or . . . new facts or legal authority which

7   could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.*

8   Motions for reconsideration should be granted only in "highly unusual circumstances." *Marlyn*

9   *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting

10  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "A motion for

11  reconsideration 'may not be used to raise arguments or present evidence for the first time when

12  they could reasonably have been raised earlier in the litigation.'" *Id.* (quoting *Kona Enters., Inc.*

13  *v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is

14  committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands*

15  *of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

16  **B.    Discussion**

17  As part of its motion for sanctions, Plaintiff also "asks this Court to reconsider its motion

18  to preliminarily enjoin Defendant Holmes and Ambyth from doing business with those

19  customers from [Plaintiff's] confidential and trade secret customer list that Defendant Holmes

20  solicited and transacted business with prior to signing his false declaration." Dkt. No. 124 at 11;

21  *see also id.* at 11–14 (evaluating TRO factors). Defendants declined to address the motion to

22  reconsider in their response, but they stated that "upon the Court's request, Defendants are

23  prepared to fully brief this issue." Dkt. No. 138 at 8.

24

As discussed above, Plaintiff's motion for sanctions is granted, as the evidence shows that Defendant Holmes used information from Plaintiff's customer list to solicit customers. *See supra* § II(B). Moreover, the motion is based on new evidence uncovered in discovery that could not have been presented with the motion for TRO at the outset of this matter. *See* Dkt. No. 124 at 5–10. Therefore, the Court finds Plaintiff's motion to reconsider appropriate. However, before ruling on Plaintiff's request to reconsider, the Court will allow Defendants to file briefing on the issue of whether this Court's prior Order on Plaintiff's motion for TRO should be modified to enjoin Defendants Holmes and Ambyth from doing business with customers solicited by Defendant Holmes. Therefore, the Court RESERVES decision on Plaintiff's request.

### IV.   MOTION TO SEAL

**A.   Legal Standard**

There is a strong presumption of public access to court-filed documents. Local Civil Rule ("LCR") 5(g); *accord Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to seal records related to motions that are dispositive or otherwise "more than tangentially related to the merits of a case" must "meet the high threshold of showing that 'compelling reasons' support secrecy." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098–99 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1180. However, if the motion is non-dispositive and only tangentially related to the merits of a case, a party need only make a showing of "good cause" under Federal Rule of Civil Procedure 26(c). *Ctr. for Auto Safety*, 809 F.3d at 1101.

**B.   Discussion**

Plaintiff moves to seal its Motion for Sanctions and the six exhibits attached to the motion. Dkt. No. 123 at 1. Plaintiff argues that its redactions to the motion that cover specific customer names, contact information, and transaction details are supported by compelling

reasons and are as minimal as possible. *Id.* at 4. However, Plaintiff believes the exhibits could be redacted. *Id.* In response, Defendants argue that Exhibit 3 (Dkt. No. 127-2) and Exhibit 6 (Dkt. No. 127-5) should remain under seal because they also contain customer identities and confidential financial information. Dkt. No. 136 at 3–4. As to the remaining exhibits, Defendants simply state that they "do[ ] not object" to leaving them under seal. *Id.* at 2.

As an initial matter, Plaintiff applies the "compelling reasons" standard to its proposed redactions and does not address whether the "good cause" standard applies instead. *See* Dkt. No. 123 at 2–4. For their part, Defendants discuss both standards but do not identify which standard should be applied. *See* Dkt. No. 136 at 2–3. Whether a motion for sanctions is more than tangentially related to the merits of a case is dependent on the facts of each case. *Compare, e.g.*, *Westerkamp v. Mueller*, No. C21-2088, 2023 WL 3060971, at *1 (D. Ariz. Apr. 24, 2023) (finding the "compelling reasons" standard applies to a motion for sanctions), *with Delvecchia v. Frontier Airlines, Inc.*, No. C19-1322, 2021 WL 5605176, at *5 (D. Nev. Nov. 30, 2021) (finding the "good cause" standard applies instead).

Regardless of which standard applies, the Parties' sealing requests are permissible insofar as they protect customer identities or confidential financial information, which this Court has previously approved under the "compelling reasons" standard. *See* Dkt. No. 52 at 4–5. Thus, redactions to Plaintiff's motion are permissible where they name a specific customer. *See, e.g.*, Dkt. No. 124 at 5:25, 6:9, 6:17, 6:25. So, too, is Defendants' request to seal the entirety of Exhibits 3 and 6, which are simply lists of Defendant Ambyth's customers and/or associated financial information. *See* Dkt. Nos. 127-2, 127-5.

However, the Parties' requests otherwise sweep too broadly and are without any provided justification. For example, the Court will not seal the entirety of Exhibits 1 and 2 (Dkt. Nos. 127, 127-1), which are excerpts from deposition transcripts, nor will it permit redactions of quotes

from those transcripts in the motion (*see, e.g.*, Dkt. No. 124 at 2:18–19, 6:3–5), as neither Party has offered any reasons for those requests. Similarly, the Court will not seal the entirety of Exhibits 4 and 5 (Dkt. Nos. 127-3, 127-4), which are printouts of email conversations, as neither Party has offered any reasons for those requests. If the Parties believe specific portions of Exhibits 1, 2, 4, or 5, should be sealed (both in the exhibit and as quoted in the motion), they may file new redacted versions of those documents with an accompanying motion to seal that identifies and applies the applicable sealing standard. Otherwise, the documents must be refiled without any redactions. Therefore, Plaintiff's Motion to Seal is GRANTED IN PART and DENIED IN PART.

## V.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)     Plaintiff's Motion for Sanctions (Dkt. Nos. 124 (sealed), 125) is GRANTED. Plaintiff is AWARDED the attorney fees associated with its motion.

        (a)     Plaintiff SHALL file an accounting of the attorney fees requested **within fourteen (14) days** of this Order.

        (b)     Defendants SHALL have **seven (7) days** to file any objections to the accounting.

        (c)     If Defendants have no objections to the accounting, they SHALL pay Plaintiff the requested amount **within twenty-eight (28) days** of this Order and file a certification that the amount has been paid.

(2)     Decision is RESERVED on Plaintiff's request contained in its Motion for Sanctions (Dkt. No. 124 at 11–14) that the Court reconsider its prior Order on Plaintiff's motion for TRO (Dkt. No. 40).

1      (a)    Defendants SHALL file, **within fourteen (14) days** of this Order, a

2             supplemental brief on Plaintiff's request to reconsider this Court's prior Order

3             on Plaintiff's motion for TRO. The brief SHALL NOT exceed five pages.

4      (b)    Should Plaintiff wish to respond, a response brief may be filed **within**

5             **seven (7) days** of the filing of Defendants' brief. The response brief

6             SHALL NOT exceed five pages.

7      (c)    Plaintiff's request SHALL be noted for **September 19, 2024.**

8    (3)    Plaintiff's Motion to Seal (Dkt. No. 123) is GRANTED IN PART and DENIED IN PART.

9      (a)    The Parties SHALL meet and confer, **within fourteen (14) days** of this

10             Order, to determine whether the documents at issue (Dkt. Nos. 124, 127,

11             127-1, 127-3, 127-4) can be unsealed in their entirety or whether one or

12             both Parties seeks to seal a portion or the entirety of any document.

13          (i)    If the Parties agree that no additional sealing is required, the

14                  unsealed documents SHALL be filed **within three (3) days** of the

15                  meet and confer.

16          (ii)    If one or both Parties seeks additional sealing or redactions, the

17                  Party or Parties seeking to further seal or redact the documents

18                  SHALL file, **within seven (7) days** of the meet and confer, the

19                  documents with all requested redactions and an accompanying

20                  motion to seal.

21    Dated this 29th day of August 2024.

22

23                                   Tana Lin

24                                   United States District Judge