1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10

11    SILVER FERN CHEMICAL, INC., a              CASE NO. 2:23-cv-00775-TL
      Washington corporation,
12                                               ORDER ON MOTION TO DISMISS
                        Plaintiffs,              COUNTERCLAIMS
13
              v.
14
      SCOTT LYONS, an individual; TROY
15    KINTO, an individual; KING HOLMES, an
      individual; ROWLAND MORGAN, an
16    individual; and AMBYTH CHEMICAL
      COMPANY, a Washington corporation,
17
                        Defendants.
18
      SCOTT LYONS, an individual, and KING
19    HOLMES, an individual,

20                      Counterclaim Plaintiffs,
              v.
21
      SILVER FERN CHEMICAL, INC., a
22    Washington corporation; SAM KING, an
      individual; and LISA KING, an individual,
23
                        Counterclaim Defendants.
24

1    This matter is before the Court on Counterclaim Defendants' Motion to Dismiss

2  Counterclaim Plaintiffs Lyons and Holmes's Amended Counterclaims. Dkt. No. 100. Having

3  reviewed Counterclaim Plaintiffs' response (Dkt. No. 105),[1] Counterclaim Defendants' reply

4  (Dkt. No. 109), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion

5  as follows.

6  ## I.    BACKGROUND

7    The Court assumes familiarity with the facts of the case. Relevant to this motion,

8  Defendants Scott Lyons and King Holmes have filed counterclaims against Plaintiff Silver Fern

9  Chemical, Inc., as well as Third-Party Defendants Sam King and Lisa King, the owners of

10  Plaintiff. *See* Dkt. Nos. 97 (redacted), 98 (sealed). The following facts are recited as alleged in

11  the pleadings.[2]

12    Defendants Lyons and Holmes are former employees of Plaintiff. Dkt. No. 98 ¶ 1.9. Both

13  Defendants worked in sales with the title of "Account Manager." *Id.* Defendant Holmes was paid

14  entirely on a commission basis, with commissions amounting to a specific percentage of gross

15  margin collections on business for which Defendant Holmes was the procuring cause. *Id.* ¶ 1.14.

16  Final commissions were calculated for the immediately preceding quarter after Plaintiff deducted

17  a "cost of doing business" charge of a set percentage of gross profit. *Id.* From 2021 to 2023,

18  Plaintiff charged Defendant Holmes that specific percentage of gross profit as the "cost of doing

19  business." *Id.* Similarly, Defendant Lyons was paid with a base salary plus commissions. *Id.*

20  ¶ 1.25. After the base payment, he was paid one rate of gross profit of collections up to a certain

21  amount, and a higher rate for collections above that amount for which he was the procuring

22

23  ---
[1] For future pleadings over ten pages in length, Defendants/Counterclaim Plaintiffs shall include a table of contents and authorities. *See* Judge Tana Lin, Standing Order for All Civil Cases § II(C) (last updated May 2, 2024).

24  [2] For clarity and consistent across orders, the Court refers to the Parties by their initial orientation (*i.e.*, Plaintiff, Defendant(s), Third-Party Defendant(s)).

1  cause. *Id.* Until March 2023, like Defendant Holmes, Defendant Lyons was also charged the

2  same specific percentage of gross profits as the "cost of doing business." *Id.*[3]

3        Commissions for both Defendants were paid on a quarterly basis, but looking back to

4  business signed two quarters prior. *Id.* ¶¶ 1.15, 1.26. For example, commissions for business

5  signed in the first quarter would not be paid until July 15, regardless of when collections for that

6  business were received by Plaintiff. *Id.* ¶ 1.15.

7        Since January 2021, both Defendants' commissions were deducted without authorization

8  to cover Plaintiff's losses. *Id.* ¶ 1.17. In one case, Plaintiff deducted commission owed to

9  Defendant Holmes as an unauthorized setoff after credit was mistakenly extended to a fraudulent

10 buyer at the direction of Sam King. *Id.* ¶¶ 1.17–1.18. In another case, Plaintiff deducted

11 commission owed to both Defendants due to "inventory write downs." *Id.* ¶¶ 1.19, 1.30.

12       In February 2023, Plaintiff announced that compensation packages would be reduced

13 across the board. *Id.* ¶ 1.20. Effective March 1, 2023, the "cost of doing business" charge would

14 be increased by different amounts for back-to-back deals and inventory deals. *Id.* Both

15 Defendants ultimately resigned from Plaintiff. *Id.* ¶¶ 1.21, 1.32.

16 ## II.   LEGAL STANDARD

17       A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

18 can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the

19 Court takes all well-pleaded factual allegations as true and considers whether the complaint

20 "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

21

22

---

[3] Counterclaim Defendants argue that Counterclaim Plaintiffs do not allege that the "cost of doing business" charge
was the only deduction the parties agreed to. *See* Dkt. No. 109 at 5–7. The Court reads the allegations in Paragraphs
1.14 and 1.25 as constituting the entirety of the terms of the alleged agreement between the parties. Moreover, a
plaintiff's allegations are to be construed in the light most favorable to them. *See DaVinci Aircraft, Inc. v. United
States*, 926 F.3d 1117, 1122 (9th Cir. 2019).

1   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

2   recitals of the elements of a cause of action, supported by mere conclusory statements" are

3   insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

4   that allows the court to draw the reasonable inference that the defendant is liable for the

5   misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to

6   Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the

7   light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft*, 926 F.3d at 1122

8   (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d

9   1152, 1156–57 (9th Cir. 2017)).

10                          **III.   DISCUSSION**

11          Plaintiff and Third-Party Defendants move to dismiss all of Defendants' counterclaims.

12   *See* Dkt. No. 100. The Court considers each argument in turn.

13   **A.   Breach of Implied Contract**

14          Defendants bring counterclaims for breach of implied contract, alleging that Plaintiff

15   breached a contract implied in fact that addressed compensation. Dkt. No. 98 ¶¶ 1.53–1.59

16   (Lyons), 1.60–1.66 (Holmes). Specifically, Defendants allege that Plaintiff "failed to pay . . . full

17   wages, including proper commission payments," when it made certain unauthorized deductions

18   from Defendants' commission. *Id.* ¶¶ 1.58, 1.65. Plaintiff argues that the alleged implied contract

19   between Plaintiff and Defendants "does not preclude the conduct of which Defendants

20   complain," thereby failing to state a claim for breach. Dkt. No. 100 at 9–10; *see also id.* at 9–11.

21   Defendants respond that the parties mutually agreed to a compensation structure that was not

22   honored. *See* Dkt. No. 105 at 18–21.

23          "A contract implied in fact arises from facts and circumstances indicating a mutual

24   consent and intent to contract." *Seashore Villa Ass'n v. Hugglund Family Ltd. P'ship*, 163 Wn.

App. 531, 545, 260 P.3d 906 (2011) (citing *Young v. Young*, 164 Wn.2d 477, 485–86, 191 P.3d 1258 (2008)). A contract implied in fact "does not describe a legal relationship which differs from an express contract; only the method of proof is different." *Eaton v. Engelcke Mfg., Inc.*, 37 Wn. App. 677, 680, 681 P.2d 1312 (1984) (citing *Johnson v. Whitman*, 1 Wn. App. 540, 545, 463 P.2d 207 (1969)).

Adapted to the Parties in this matter, the elements of a contract implied-in-fact are: (1) Plaintiff requests work; (2) Defendants expect payment for the work; and (3) Plaintiff knows or should know Defendants expect payment for the work. *See Maldonado v. Columbia Valley Emergency Physicians LLC*, No. C20-5428, 2020 WL 5413704, at *4 (W.D. Wash. Aug. 12, 2020) (quoting *Young*, 164 Wn.2d at 483), *report and recommendation adopted*, 2020 WL 5408046 (W.D. Wash. Sept. 9, 2020). "To prevail on a claim for breach of implied contract, a party must demonstrate that [an] implied contract exists based on the acts of the parties involved and in light of the surrounding circumstances." *Leslie v. Fidelity Nat. Title Ins. Co.*, 598 F. Supp. 2d 1176, 1184 (W.D. Wash. 2009). "[A] trial court may 'deduce mutual assent from the circumstances, whereby the court infers a contract based on a course of dealings between the parties or a common understanding within a particular commercial setting.'" *Id.* (quoting *Hoglund v. Meeks*, 139 Wn. App. 854, 870–71, 170 P.3d 37 (2007)). The parties' manifestation of mutual assent is generally a question of fact. *Id.*

Here, for the purposes of a motion to dismiss, Defendants sufficiently alleged an implied contract exists based on the conduct and duration of Defendants providing sales services in exchange for Plaintiff's commission payments. Dkt. No. 98 ¶¶ 1.53–1.66. Defendants allege that the parties had over a decade-long relationship where Defendants were regularly compensated accordingly to an agreed-upon commission structure. *Id.* ¶¶ 1.9, 1.14–1.15, 1.25–1.26, 1.43–1.46, 1.54–1.57, 1.62, 1.64. Defendants also allege that Plaintiff issued payments to Defendants

1   for their work on a quarterly basis and Defendants accepted those payments, which were detailed

2   in commission spreadsheets. *Id.* ¶ 1.31. This conduct supports the conclusion that there was

3   mutual assent to the amount that was to be compensated or deducted for the quarterly payments,

4   and that Plaintiff knew that Defendants would expect this payment for their work. *Id.* ¶¶ 1.43–

5   1.46, 1.54–1.57; *see also Maldonado*, 2020 WL 5413704, at *5 (finding sufficient allegations of

6   an implied contract term as to dollar value of medical services); *cf. Converse v. Vizio, Inc.*,

7   No. C17-5897, 2020 WL 2922490, at *3 (W.D. Wash. June 3, 2020) (affirming denial of

8   certification of implied contract claim where insufficient evidence of "reasonable life of the

9   product" implied term).

10          Further, Defendants sufficiently allege that Plaintiff breached the implied contract by

11   making unauthorized deductions to Defendants' wages. Dkt. No. 98 ¶¶ 1.58, 1.65. As discussed

12   above, the Court can reasonably infer that the parties mutually agreed to a commission structure

13   with specific terms; deviation from that structure as applied to the 2022 commission calculation

14   plausibly states a claim for breach. Plaintiff argues that Defendants do not define what "costs"

15   could be deducted (*see* Dkt. No. 100 at 10), but Defendants did define it: a specified, set percent

16   of gross profit. Dkt. No. 98 ¶¶ 1.14, 1.25; *see also* "Profit," Black's Law Dictionary (12th ed.

17   2024) ("Gross profit: total sales revenue less the cost of the goods sold, no adjustment being

18   made for additional expenses and taxes."). Thus, Defendants allege that the agreement permitted

19   that deduction and nothing further. While this ultimately may turn out not to be the case,

20   Defendants have made the allegations, and on a motion to dismiss, the Court accepts well-plead

21   allegations as true. *DaVinci Aircraft*, 926 F.3d at 1122.

22          Therefore, as to Defendants' claim for breach of implied contract, Plaintiff and Third-

23   Party Defendants' motion is DENIED.

24

**B.**     **Willful Withholding of Wages**

Defendants bring claims of wage withholding under the Washington Wage Rebate Act ("WRA"), RCW 49.52.050, and the Washington Sales Representative Act ("WSRA"), RCW 49.48.160, alleging that Plaintiff, as well as Third-Party Defendants Sam King and Lisa King, willfully refused to pay Defendants their full wages within 30 days of receipt of payment.[4] Dkt. No. 98 ¶¶ 1.48–1.49; *see id.* ¶¶ 1.40–1.52.

**1.**     **WRA**

Plaintiff and Third-Party Defendants argue that Defendants do not allege that the withholding was "willful" under the WRA. *See* Dkt. No. 100 at 11–13. Defendants respond that they have made such allegations.  *See* Dkt. No. 105 at 13–16.

The WRA states, in relevant part:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who . . .
>
> (2) Willfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .
>
> Shall be guilty of a misdemeanor.

RCW 49.52.050. A person who violates RCW 49.52.050 is liable in a civil action for "twice the amount of the wages unlawfully rebated or withheld" as well as "costs of suit and a reasonable

---

[4] In their response, Defendants make arguments under RCW 49.48.010, including whether a statutory exception applies. *See* Dkt. No. 105 at 7–8, 10–13. However, nowhere in their counterclaims do Defendants allege a claim under this statute. *See* Dkt. No. 98 ¶¶ 1.40–1.52. Instead, Defendants cite to RCW 49.48.160, 49.52.050, and 49.52.070. *See id.* ¶¶ 1.41–1.42, 1.48–1.49. Therefore, the Court will not address arguments under RCW 49.48.010.

Further, in their response, Defendants also discuss the wage status of commissions (*see* Dkt. No. 105 at 8–9) and the personal liability of Third-Party Defendants Sam and Lisa King (*see id.* at 8). But these arguments are not bases for Plaintiff's motion to dismiss. Therefore, the Court will not address them.

1    sum for attorney's fees." RCW 49.52.070. This liability does not attach where an employee "has

2    knowingly submitted to such violations." *Id.*

3              "The critical determination in a case under RCW 49.52.070 for double damages is

4    whether the employer's failure to pay wages was 'willful.'" *Schilling v. Radio Holdings*, 136

5    Wn.2d 152, 159, 961 P.2d 371 (1998). This test is not "stringent." *Id.* Instead, "the employer's

6    refusal to pay must be volitional." *Id.* "Willful means 'merely that the person knows what he is

7    doing, intends to do what he is doing, and is a free agent.'" *Id.* (quoting *Brandt v. Impero*, 1 Wn.

8    App. 678, 681, 463 P.2d 197 (1969)) (internal quotation marks omitted). "Where an employer

9    fails to pay wages owed, only two instances negate a finding of willfulness: (1) 'the employer

10   was careless or erred in failing to pay' or (2) 'a bona fide dispute existed between the employer

11   and employee regarding the payment of wages.'" *Wash. State Nurses Ass'n v. Sacred Heart Med.*

12   *Ctr.*, 175 Wn.2d 822, 834, 287 P.3d 516 (2012) (quoting *Morgan v. Kingen*, 166 Wn.2d 526,

13   534, 210 P.3d 995 (2009)) (internal quotation marks omitted). "Ordinarily," the issue of

14   willfulness "is a question of fact." *Schilling*, 136 Wn.2d at 160 (citing *Pope v. Univ. of Wash.*,

15   121 Wn.2d 479, 490, 852 P.2d 1055 (1993)).

16             Again, accepting all well-pleaded facts as true and construing them in the light most

17   favorable to Defendants on a motion to dismiss, Defendants have sufficiently alleged a claim

18   under the WRA. As discussed above, *see* Section III(A), Defendants have pleaded the existence

19   of an implied contract, the terms of which entitled them to wages under a certain compensation

20   structure, as well as the breach of that implied contract in Plaintiff and Third-Party Defendants'

21   failure to pay the entirety of those wages. Defendants' allegations thus depict volitional actions

22   by Plaintiff and Third-Party Defendants to withhold wages, not carelessness or a bona fide

23   dispute regarding payment. *Schilling*, 136 Wn.2d at 159.

24

1   Therefore, as to Defendants' claim for willful withholding of wages under the WRA,

2   Plaintiff and Third-Party Defendants' motion is DENIED.

3       2.    **WSRA**

4       Plaintiff and Third-Party Defendants argue that Defendants do not allege that Plaintiff

5   Silver Fern is a "principal" or that Defendants Lyons and Holmes are "sales representatives"

6   under the WSRA. *See* Dkt. No. 109 at 8–9. Defendants argue that they have made such

7   allegations. *See* Dkt. No. 105 at 8, 10.[5]

8           a.    ***Arguments Properly Considered***

9       As an initial matter, Defendants argue that nothing in the motion to dismiss disputes the

10  sufficiency of the factual allegations for the claims under RCW 49.48 *et seq.* and, therefore, the

11  Court should strike any attempt by Plaintiff and Third-Party Defendants to make any argument in

12  their reply. Dkt. No. 105 at 7. Rather than stop there (and perhaps ask for leave to file a sur-

13  reply, should the Court allow Plaintiff and Third-Party Defendants to raise any such improper

14  argument for the first time on reply), Defendants spend the next six pages of their response

15  justifying their claims under RCW 49.48 *et seq. See* Dkt. No. 105 at 7–13. Not surprisingly,

16  Plaintiff and Third-Party Defendants then include responses to these arguments in their reply.

17      Defendants are correct that it is well established that a party may not raise a new issue in

18  a reply brief. *See United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992). But while

19  "[a] district court need not consider arguments raised for the first time in a reply brief," it

20  nevertheless has the discretion to do so. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007).

21  Courts have exercised this discretion when the new issue argued in the reply is offered in

22

23  _____

24  [5] Plaintiffs also argue that Defendants do not allege damages for failure to pay commissions within 30 days. *See* Dkt. No. 109 at 7. Defendants argue that they made such allegations. *See* Dkt. No. 105 at 10. However, because the claim will be dismissed on other grounds, the Court need not reach this argument.

response to an argument raised in the opposition's response brief. *See Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003) ("Although this court generally does not review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the appellee's brief.") (citations omitted); *McGeer v. BNSF Ry. Co.,* No. C09-5330, 2013 WL 1499053, at *2 (W.D. Wash. Apr. 10, 2013) (considering replies to specific arguments raised in opponent's responsive brief). The Court will thus exercise its discretion here to consider arguments in Plaintiff and Third-Party Defendants' reply brief that respond to points raised in Defendants' responsive briefing.

  **b.**  ***Discussion***

The WSRA states, in relevant part:

> During the course of the contract, a sales representative shall be paid the earned commission and all other moneys earned or payable in accordance with the agreed terms of the contract, but no later than thirty days after receipt of payment by the principal for products or goods sold on behalf of the principal by the sales representative.

RCW 49.48.160(3)(a). "RCW 49.48.160 applies only in the wholesale context." *Iseman v. Digital River, Inc.*, No. C10-1210, 2012 WL 833030, at *6 (W.D. Wash. Mar. 12, 2012) (on summary judgment, finding WSRA inapplicable to a direct consumer store); *accord D'Ewart Representatives, L.L.C. v. Sediver USA, Inc.*, No. C22-802, 2023 WL 2598949, at *2 (W.D. Wash. Mar. 22, 2023) ("[O]nly wholesale sales are implicated by the [WSRA].").

"Principal" is defined as:

> a person, whether or not the person has a permanent or fixed place of business in this state, who:
>
> > (a) Manufactures, produces, imports, or distributes a product for sale to customers who purchase the product for resale;
> >
> > (b) Uses a sales representative to solicit orders for the product; and

(c) Compensates the sales representative in whole or in part by commission.

RCW 49.48.150(2). "Sales representative" is defined as:

a person who solicits, on behalf of a principal, orders for the purchase at wholesale of the principal's product, but does not include a person who places orders for his or her own account for resale, or purchases for his or her own account for resale, or sells or takes orders for the direct sale of products to the ultimate consumer.

RCW 49.48.150(3). "When no written contract has been entered into, any agreement between a sales representative and a principal is deemed to incorporate the provisions of RCW 49.48.150 through 49.48.190." RCW 49.48.160(2). "Failure to pay an earned commission is a wage payment violation under RCW 49.52.050." RCW 49.48.160(4).

Here, Defendants have not sufficiently alleged a claim under the WSRA. Defendants use the term "resale" a single time in describing their Counterclaim: they allege only that Plaintiff "distributes chemical products for sale to customers who purchase the product for use and resale *in various household and industrial products,*" Dkt. No. 98 ¶ 1.9 (emphasis added), indicating that Plaintiff's customers are the ultimate users of the chemicals that are purchased. This single use of the term "resale" is insufficient to establish Plaintiff as a principal. Further, there are no allegations in Plaintiff's Second Amended Complaint that indicate Plaintiff sells chemicals to customers who in turn resell them. *See* Dkt. No. 84 (sealed) ¶¶ 19–44 (describing Plaintiff's business). On the contrary, Plaintiff describes a business of "[f]ulfilling orders for highly-specialized chemicals" (*id.* ¶ 22) that is built upon the knowledge of the needs and business of each customer, including which chemicals are needed, when they are needed, and in what amounts, and establishing relationships with trusted chemical vendors who supply the chemicals that are sold. Thus, Plaintiff is not a "principal" under the WSRA.

1    Even if Defendants could replead Plaintiff's status as a "principal," the claim also fails

2    because Defendants Lyons and Holmes are not "sales representatives" under the WSRA. As

3    discussed above and in the pleadings, Plaintiff's business is built upon connecting its customers

4    to trusted vendors who can supply the chemicals required, not in selling chemicals for resale by

5    their customers. *See, e.g.*, Dkt. No. 84 ¶¶ 32–44. In other words, Plaintiff's customers are the

6    ultimate consumers of the chemicals. Thus, Defendants Lyons and Holmes are each a person

7    who "sells or takes orders for the direct sale of products to the ultimate consumer," RCW

8    49.48.150(3), and they are excluded from WSRA's coverage.

9    Therefore, as to Defendants' claim for willful withholding of wages under the WSRA,

10   Plaintiff and Third-Party Defendants' motion is GRANTED without leave to amend, as amendment

11   would be futile.

12   **C.      Breach of Implied Duty**

13   Defendants bring a counterclaim for breach of the covenant of good faith and fair

14   dealing, alleging that Plaintiff "acted in a manner that prevented [Defendants] Holmes and Lyons

15   from attaining [their] reasonable expectations" under Defendants' employment and commission

16   agreements. Dkt. No. 98 ¶ 1.69; *see id.* ¶¶ 1.67–1.71. Plaintiff argues that "Defendants have

17   failed to plead an agreed-upon contract term over which [Plaintiff] had discretionary authority."

18   Dkt. No. 100 at 13; *see id.* at 13–14. Defendants respond that Plaintiff "intentionally and covertly

19   deviated" from its agreements with Defendants. Dkt. No. 105 at 23; *see id.* at 21–23.

20   While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that

21   duty "is not free-floating, but 'arises only in connection with terms agreed to be the parties.'"

22   *Est. of Carter v. Carden*, 11 Wn. App. 2d 573, 583–84, 455 P.3d 197 (2019) (quoting *Badgett v.*

23   *Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). "If there is no contractual duty,

24   there is nothing that must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-

767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016). "Importantly, a violation of the duty of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings, a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (holding that duty of good faith and fair dealing can arise even when there is no breach of an express contract term). "It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Smartwings*, 2022 WL 579342, at *6 (quoting *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013)).

Here, Defendants sufficiently plead a claim for breach of the implied duty. As discussed above, *see* Section III(A), Defendants have sufficiently pleaded the existence and breach of an implied contract. Thus, a duty of good faith and fair dealing arises in connection with the terms of the contract, *Est. of Carter*, 11 Wn. App at 584, and Defendants' allegations describe a failure of Plaintiff Silver Fern to honor its duties under that contact. While Plaintiff correctly argues that a party's abuse of discretion in its determination of a contract term is *one* way that party may breach the implied duty, it is not the *only* way, and a breach of contract is plainly another way. *Est. of Carter*, 11 Wn. App. 2d at 583 ("This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." (quoting *Badgett*, 116 Wn.2d at 569)); *see also Smartwings*, 2022 WL 579342, at *6.

Therefore, as to Defendants' claim for breach of the implied duty, Plaintiff and Third-Party Defendants' motion is DENIED.

1    **D.      Unjust Enrichment**

2          Finally, Defendants bring a claim for unjust enrichment, alleging that Plaintiff and Third-

3    Party Defendants made unauthorized unilateral modifications to Defendants' commission for

4    deals Defendants worked on in 2022 and have suffered economic damages as a result. Dkt. No.

5    98 ¶¶ 1.72–1.75. Plaintiff and Third-Party Defendants argue that Defendants cannot bring a

6    claim for unjust enrichment because the alleged agreement between Defendants and Plaintiff

7    "embrace[s] the same subject matter." Dkt. No. 100 at 15. Plaintiff and Third-Party Defendants

8    further argue that Defendants have not pleaded any facts under which the Court can conclude

9    that Plaintiff or Third-Party Defendants unjustly retained a benefit that should have been paid to

10   Defendants. *See id.* Finally, they argue that Defendants have not alleged a claim of unjust

11   enrichment against the individual Third-Party Defendants. *See* Dkt. No. 100 at 16. Defendants

12   respond that their claim for breach of implied contract is not necessarily inconsistent with their

13   unjust enrichment claim, as the implied contract "does not address what modifications, if any,"

14   Plaintiff could make to the contract. Dkt. No. 105 at 24; *see id.* at 24–25.

15         "Unjust enrichment is the method of recovery for the value of the benefit retained absent

16   any contractual relationship because notions of fairness and justice require it." *Young*, 164

17   Wn.2d at 484. Adapted to the Parties in this matter, pleading a claim for unjust enrichment

18   requires Defendants to show: (1) a benefit conferred upon Plaintiff or Third-Party Defendants by

19   the Defendants; (2) an appreciation or knowledge by Plaintiff or Third-Party Defendants of the

20   benefit; and (3) the acceptance or retention by Plaintiff or Third-Party Defendants of the benefit

21   under such circumstances as to make it inequitable for them to retain the benefit without

22   payment of its value. *See Young*, 164 Wn.2d at 484; *see also Puget Sound Sec. Patrol, Inc. v.*

23   *Bates*, 197 Wn. App. 461, 475, 389 P.3d 709 (2017) ("[T]o recover for unjust enrichment the

24   plaintiff must plead both unjust retaining of benefits and why an equitable remedy is

necessary."). Parties subject to a valid contract may not bring a claim for unjust enrichment for issues arising under the contract's subject matter. *See Hold Sec. LLC v. Microsoft Corp.*, No. C23-899, 2023 WL 8433122, at *8 (W.D. Wash. Dec. 5, 2023) (citing *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002)). "Unjust enrichment is an equitable remedy." *Kingston v. Int'l Bus. Mach. Corp.*, 454 F. Supp. 3d 1054, 1062 (W.D. Wash. 2020).

Here, Defendants cannot maintain a claim for unjust enrichment. Defendants do not bring their claim in the alternative to breach of implied contract, instead insisting that the alleged implied contract "does not address" modifications to wages. Dkt. No. 105 at 24. But in the same brief, Defendants argue that Plaintiff and Third-Party Defendants made unauthorized deductions to wages in violation of the implied contract. *See* Dkt. No. 105 at 18–21. Thus, as the alleged implied contract plainly covers the same subject matter (*i.e.*, wages), Defendants cannot maintain a separate unjust enrichment claim. *Cf. Woodard v. Boeing Emps. Credit Union*, No. C23-33, 2023 WL 4847126, at *5–6 (W.D. Wash. July 28, 2023) (on motion to dismiss, dismissing implied contract and unjust enrichment claims where express contract governed the same subject matter).

Therefore, as to Defendants' claim for unjust enrichment, Plaintiff and Third-Party Defendants' motion is GRANTED without leave to amend, as amendment would be futile.

//

//

//

//

//

//

1

## IV.   CONCLUSION

2    Accordingly, Counterclaim Defendants' motion (Dkt. No. 100) is GRANTED IN PART and

3 DENIED IN PART. Counterclaim Plaintiffs' claims for unjust enrichment and violation of the

4 WSRA are DISMISSED without leave to amend. The motion is otherwise DENIED.

5    Dated this 29th day of August 2024.

6

7    _____
     Tana Lin

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24