UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SILVER FERN CHEMICAL, INC., a Washington corporation,

Plaintiff,

v.

SCOTT LYONS, an individual; TROY KINTO, an individual; KING HOLMES, an individual; ROWLAND MORGAN, an individual; and AMBYTH CHEMICAL COMPANY, a Washington corporation,

Defendants.

SCOTT LYONS, an individual, TROY KINTO, an individual, and KING HOLMES, an individual,

Counterclaim Plaintiffs,

v.

SILVER FERN CHEMICAL, INC., a Washington corporation, SAM KING, an individual, and LISA KING, an individual,

Counterclaim Defendants.

CASE NO. 2:23-cv-00775-TL

ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS, AND EXEMPLARY DAMAGES

This matter is before the Court on Plaintiff Silver Fern Chemical, Inc.'s, Motion for Attorney Fees, Costs, and Exemplary Damages. Dkt. No. 324. Having reviewed Defendants Scott Lyons, King Holmes, Troy Kinto, Rowland Morgan, and Ambyth Chemical Company's opposition (Dkt. No. 345), Plaintiff's reply (Dkt. No. 354), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

## I. Background

The Court assumes familiarity with the facts of this case. *See generally* Dkt. No. 360 (Order on Renewed Motion for Judgment as a Matter of Law ("Rule 50 Order")).

## II. Discussion

### A. Attorney Fees and Costs

#### 1. Attorney Fees and Costs Legal Standard

In assessing requests for attorney fees, courts in this Circuit consider the reasonableness of the request "based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate [the lodestar calculation], and then adjusted in accordance with the factors laid out in *Kerr v. Screen Extras Guild, Inc.*" *N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*, No. C14-1680, 2016 WL 4533055, at *5 (W.D. Wash. Jan. 27, 2016). The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *accord Burkhalter v. Burkhalter*, Nos. 22-55909, 22-55910, 22-55912, 22-55913, 2023 WL 7490053, at *3–4 (9th Cir. Nov. 13, 2023) (finding abuse of discretion where a court failed to address relevant reasonableness factors set forth in *Kerr* after calculating the lodestar when reviewing a request for attorney fees).

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). A district court retains "a great deal of discretion" in determining the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). However, the court must "provide a concise but clear explanation of its reasons for the fee award," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), by "show[ing] their work when calculating attorney's fees." *Padgett v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013). "Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

**2. Request for Attorney Fees and Costs**

***a. Attorney Fees***

Under the Washington Uniform Trade Secrets Act ("WUTSA"), "If . . . wil[l]ful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." RCW 19.108.040. Additionally, under the Defend Trade Secrets Act ("DTSA"), "if . . . the trade secret was willfully and maliciously misappropriated, [the court may] award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D). An award of attorney fees is under the Court's discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). Washington courts have awarded attorney fees and costs after a finding of willful and malicious misappropriation of a trade secret. *See, e.g.*, *id.* at 64 (finding that plaintiff was entitled to attorney fees where trial court found that defendant had willfully and maliciously misappropriated plaintiff's trade secrets); *Guidance Residential, LLC v. Mangrio*, No. 75507-2-I, 2017 WL 6452421, at *10 (Wash. Ct. App. Dec. 18, 2017) (affirming award of fees to plaintiff for successful WUTSA claims where jury found defendant's trade-secret

misappropriation was willful and malicious); *Eagle Grp., Inc. v. Pullen*, 114 Wn. App. 409, 423–24, 58 P.3d 292 (2002) (trial court did not err in awarding attorney fees and exemplary damages based on willful and malicious actions). District courts in this Circuit have also awarded attorney fees under the DTSA after a finding of willful and malicious misappropriation of a trade secret. *See, e.g., Or. Wa. Health Network v. Inspired Bus. Connections LLC*, No. C23-897, 2024 WL 3411769, at *6 (D. Or. June 3, 2024) (awarding attorney fees under DTSA and state trade-secrets statute after finding of willful and malicious misappropriation of trade secret); *A&C Trade Consultants, Inc. v. Alvarez*, No. C18-5356, 2021 WL 4749436, at *1–2 (N.D. Cal. Oct. 12, 2021) (same); *M S Int'l, Inc. v. Patel*, No. C18-152, 2018 WL 11350041, at *16 (C.D. Cal. Nov. 26, 2018) (same).

As a preliminary matter, the jury found that the Defendants' conduct was willful and malicious (*see* Dkt. No. 316 (Redacted Jury Verdict) at 3), and the Court found that this verdict was supported by substantial evidence (Dkt. No. 360 at 22).

Plaintiff asks for $1,262,045.50 in attorney fees and $42,022.78 in costs, arguing that such fees and costs are "reasonable and related to [Plaintiff]'s prosecution of its WUTSA and DTSA claims." Dkt. No. 324 at 13. In response, Defendants make several arguments for denying Plaintiff's motion, including: (1) the Court should apply a percentage reduction to the attorney fees requested because Plaintiff failed to segregate successful and unsuccessful claims;
(2) attorney fees related to counselor Kim Stephens's work should not be awarded because his work could have been done by an attorney with a lower hourly rate, and Plaintiff employed him and other partners for a disproportionate amount of time compared to junior attorneys;
(3) Plaintiff's counsel's "time entries are terse and do not allocate time to specific subjects. Such billing method is not sufficient to justify a fee award"; and (4) all costs related to transcripts are not recoverable, because Plaintiff has not made a showing that such transcripts were needed for

trial. *See* Dkt. No. 345 at 14–16. The Court will conduct a general analysis on Plaintiff's request for attorney fees and costs and address each of Defendants' arguments in turn.

(1) Hourly Rates

In determining a reasonable hourly rate, courts consider "the experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (quoting *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)), as well as "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The relevant community is the forum in which the district court sits." *Maxitransfers LLC v. Envios La Costenita 1, Inc.*, No. C24-1016, 2025 WL 2042297, at *7 (W.D. Wash. July 21, 2025). "The party seeking an award of attorney's fees bears the burden of producing 'satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services' by comparable lawyers." *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). "District judges can also 'consider the fees awarded by other judges in the same locality in similar cases,' and rely on their own knowledge and familiarity with the legal market in setting a reasonable rate." *Id.* (quoting *Moreno*, 534 F.3d at 1115).

Here, lead counsel for Plaintiff has provided a declaration in support of Plaintiff's motion (Dkt. No. 325 (Boyd Decl.)), which includes the following information:

| **Timekeeper** | **Title** | **Years of Experience** | **Hourly Rate** | **Total Hours** |
|---|---|---|---|---|
| Kaleigh Boyd | Partner | 8 | $500 | 819.4 |
| Kim Stephens | Partner | 44 | $900/$1025[1] | 109.7/0.3 |
| Jason Dennett | Partner | 25 | $800 | 315.2 |

[1] Kim Stephens' hourly rate increased in 2026 to $1025 per hour.

| | | | | |
|---|---|---|---|---|
| Cecily Jordan | Partner | 10 | $575 | 1 |
| Rebecca Solomon | Partner | 15 | $575 | 2 |
| Joan Pradhan | Associate | 8 | $450 | 566.9 |
| Lidiya Baylieva | Associate | 4 | $350 | 52.5 |
| Arshia Nilchian | Associate/Summer Associate | 1 | $300/$200 | 42.3/52.9 |
| Anna Maxwell | Summer Associate | 0 | $200 | 4.2 |
| Eve Rashby | Paralegal | 20+ | $330 | 41.1 |
| Amy Stanton | Paralegal | 20+ | $250 | 791.6 |
| Andrea Toll | Legal Assistant | 20+ | $150 | 2 |

*Id*. ¶¶ 3–4.

Plaintiff provides several cases from this District and one from the Eastern District of Washington in which Plaintiff's counsel's firm, Tousley Brain Stephens LLC, rates were accepted. *See* Dkt. No. 325 ¶ 5 (citing *Washburn v. Porsche Cars N. Am., Inc.*, No. C22-1233, 2025 WL 1017983, at *9 (W.D. Wash. Apr. 24, 2025) (finding that class counsel's proposed billing rates of $975 and $1000 were in line with prevailing partner rates in District) (citations omitted); *Brim v. Prestige Care Inc.*, No. C24-5133, Dkt. No. 31 (Boyd Decl.) ¶ 28; 37 (Order) at 6 ¶ 14 (W.D. Wash. Apr. 21, 2025) (granting plaintiff's motion for attorney fees and costs in class action case, where plaintiff's counsel's proposed billing rates were $600 per hour for partner, $500 per hour for associates, and $350 per hour for paralegal); *In re MCG Health Data Sec. Issue Litig.*, No. C22-849, Dkt. Nos. 89 ¶ 38, 95 at 5–6 ¶ 14 (W.D. Wash. Oct. 29, 2024) (same, but $750–$1,000 partner rate and $330–$350 paralegal rate); *Colacurcio v. Insight Venture Partners VII, L.P.*, No. C20-1856, Dkt. Nos. 102 ¶ 38, 109 at 3 ¶ 2 (W.D. Wash. May 11, 2022) (same, but $710–$925 partner rate, $400–$450 associate rate, and $270–$330

paralegal rate); *Gonzalez v. Banner Bank*, No. C20-5151, Dkt. No. 51 at 17 (E.D. Wash. Feb. 11, 2022) (approving class action partner hourly rate of $1,150). Plaintiff acknowledges that the cited cases were contingency-fee cases in which the rates used were higher than those billed in the instant matter. *See* Dkt. No. 325 ¶ 5. For example, in the *Washburn* class action last year, the Court approved an hourly rate of $1,125 per hour for partner Kim Stephens and $350 per hour for paralegals Eve Rashby and Amy Stanton. *See Washburn*, 2025 WL 1017983, at *9; Dkt. No. 50 at 5. Plaintiff's counsel adjusted their requested rates to account for this case not being a contingency fee class action case. Dkt. No. 325 ¶ 5. Also of significance here, Defendants do not contest whether any of the hourly rates provided by Plaintiff are unreasonable, instead presenting arguments regarding the segregation of fees, the time Kim Stephens and other partners billed, and what Defendants describe as block billing and vague time entries. *See* Dkt. No. 345 at 14–16. Such arguments will be addressed below.

(a) <u>Attorney Rates</u>

The Court finds that the cases Plaintiff provides are persuasive and concludes that the partner and associate attorney rates Plaintiff presents are reasonable given the complexity of the case, the duration of the case, the experience of the attorneys, and the results obtained for Plaintiff.

(b) <u>Paralegal Rates</u>

The Court finds that Plaintiff has not met its burden to show that the $330 per hour rate charged for paralegal Eve Rashby is reasonable. Eve Rashby is described as having over 20 years' experience, but that is the same amount of experience that is listed for paralegal Amy Stanton, for whom Plaintiff seeks a $250 hourly rate. Dkt. No. 325 at 3. As there is no explanation for the difference in requested rates, and Plaintiff's counsel previously requested a fee award that included Rashby and Stanton being billed at the same hourly rate as each other in

*Washburn* (*see Washburn*, No. C22-1233, Dkt. No. 50 at 5), the Court will award $250 per hour for Rashby. *See, e.g., Hill v. Continuum Glob. Sols., LLC*, No. C12-717, 2026 WL 592270, at *3 (W.D. Wash. Mar. 3, 2026) (approving $250 paralegal rate in class action settlement); *Cymbidium Restoration Tr. v. Am. Homeowner Preservation Tr. Series AHP Servicing*, No. C24-25, 2025 WL 2592252, at *1 (W.D. Wash. Sept. 8, 2025) (approving $235 paralegal rate for senior litigation paralegal); *Olson v. Nw. Motorsport, Inc.*, No. C20-1616, 2024 WL 2959756, at *2 (W.D. Wash. June 12, 2024) (approving fee rates of $200 per hour for paralegals). As such, Eve Rashby's 41.1 hours will be at the $250 rate, rather than $330 rate, which results in an award of $10,275, not $13,563. Therefore, the Court reduces Plaintiff's attorney fee award by $3,288.

Lastly, the Court finds that Tousley Brain Stephens' legal assistant rate of $150 for an individual with over 20 years' experience is reasonable. *See, e.g., Sorio v. Hermosillo*, No. C25-2492, 2026 WL 2593571, at *7 (W.D. Wash. Sept. 2, 2026) (finding clerical work rate of $125 to be reasonable); *UN4 Productions, Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1138 (W.D. Wash. 2019) (finding a legal assistant's hourly rate of $145 to be reasonable).

(c) Rates for E-Filing

There are several time entries in which Plaintiff's counsel billed an attorney rate or paralegal rate for filing a document with the Court. The Supreme Court noted in *Missouri v. Jenkins* that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them. . . . 'Such non-legal work may command a lesser rate. [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'" 491 U.S. 274, 288 n.10 (1989) (citation omitted). Plaintiff's counsel's legal assistant, Andrea Toll, has an hourly rate of $150 per hour. Dkt. No. 325 ¶ 3. Most of the filing of documents referenced in Plaintiff's counsel's time logs is done by either a paralegal—at either the $330 per hour rate of Eve Rashby or the $250 per hour rate of Amy Stanton—or by one of Plaintiff's

counsels at an attorney hourly rate. One of counsel's paralegals filed documents with the Court and billed paralegal rates on the following days: May 24, 2023 (Dkt. No. 326 at 3); May 25, 2023 (*id.*); November 15, 2023 (*id.* at 7); January 3, 2024 (*id.* at 8). Plaintiff's counsel filed documents with the Court and billed attorney rates on the following days: February 15, 2024 (*id.* at 10); May 31, 2024 (*id.* at 15); November 7, 2025 (*id.* at 41); November 14, 2025 (*id.* at 43); November 19, 2025 (*id.*); January 16, 2026 (*id.* at 50). Some of the entries for e-filing are included in block-billed time entries. As such, the Court cannot determine how much time precisely was attributed to the filing of documents. Therefore, the Court will take the full amount requested from the above-mentioned dates and reduce the sum to allow for such tasks at the legal assistant rate of $150 per hour. In total, Plaintiff's counsel request $16,808 from time billed on the above-mentioned dates. Calculating the requested amount at $150 per hour instead equates to $5,685. Therefore, the Court will reduce the fee award by $11,123.

(2) Number of Hours

Plaintiff bears "the burden of documenting the hours expended on this matter and establishing their reasonableness." *UN4 Prods.*, 372 F. Supp. 3d at 1137. "The hours claimed by a party may be reduced by the court if 'the documentation of the hours is inadequate'; 'if the case was overstaffed and hours are duplicated'; or 'if the hours expended are deemed excessive or otherwise unnecessary.'" *Maxitransfers*, 2025 WL 2042297, at *9 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

Plaintiff provided contemporaneous time records compiled over the course of the life of this case. Dkt. No. 326 (sealed). Five partners at Plaintiff's counsel's law firm logged hours on this case. Dkt. No. 325 ¶ 4; *see also supra* Section II.A.2.a.(1). Additionally, three associates and one summer associate logged hours on this case, as well as two paralegals and one legal assistant. *Id.* Defendants question the number of hours Plaintiff's counsel billed. Specifically,

Defendants argue that: Plaintiff's counsel's billed hours were not properly segregated from claims that were unsuccessful (*see* Dkt. No. 345 at 14–15); Kim Stephens' time and disproportional partner time was unjustifiable (*see id.* at 15); and "block billing" and "vague" time entries should be reduced (*see id.* at 16). The Court will address each of those arguments in turn.

(a) Segregation of Claims

A fee applicant who prevails on some, but not all, claims "'bears the burden of segregating her attorneys' fees between the successful claim and the unrelated, unsuccessful claims.'" *Promedev, LLC v. Wilson*, No. C22-1063, 2024 WL 3917220, at *3 (W.D. Wash. Aug. 20. 2024) (quoting *Melland v. Cornerstone Dental,* PC, 691 F. App'x 354, 354 (9th Cir. 2017)); *see also King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 632 (2017) (citing *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672 (1994)) ("'If . . . an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues.'"). Segregation of fees is necessary "unless 'the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made[.]'" *Covington v. Wise*, No. C20-6173, 2024 WL 3521533, at *4 (W.D. Wash. July 24, 2024) (quoting *Hume*, 124 Wn.2d at 673).

Plaintiff asserts it "eliminated or reduced time devoted to [Plaintiff]'s Computer Fraud and Abuse Act (CFAA) claim and work related to Defendants' counterclaims." Dkt. No. 324 at 15. Plaintiff does not assert that it segregated fees related to its claim of Duty of Loyalty and two claims of Tortious Interference (its unsuccessful claims) from its DTSA and WUTSA claims (its successful claims). *See* Dkt. No. 324 at 15–16. However, Plaintiff asserts that its fee request only reflects hours spent on its WUTSA and DTSA claims, and that any additional non-CFAA claims

could not be segregated from its hours because all remaining hours rely on common core facts. *Id*. at 15–16.

Namely, Plaintiff argues that the common core facts are that "[Defendants Lyons, Holmes, and Kinto] collu[ded] to take [Plaintiff]'s confidential compilation of customer information for their own gain and that of their subsequent employer, [Defendant] Ambyth and its owner [Defendant] Rowland Morgan." *Id*. at 16. Although Defendants argue that a percentage reduction should be made for unsuccessful claims, they do not contest Plaintiff's claim that the successful and unsuccessful claims relied on common core facts, nor do they point to any time entries that should have been segregated or provide a percentage for what should be reduced. *See* Dkt. No. 345 at 14–15.

To prove Tortious Interference, Plaintiff had to show, among other elements, that Defendants "intentionally induced or caused the termination of the business relationships or expectancy." Dkt. No. 307 (Final Jury Instructions) at 34. It is undisputed that the underlying facts Plaintiff used at trial to attempt to prove Tortious Interference are that Defendants Lyons, Holmes, and Kinto ("Salesman Defendants") took Plaintiff's confidential customer compilation information from Plaintiff and contacted such customers from the compilation after their move to Defendant Ambyth. These are the same common core facts used to prove the WUTSA and DTSA claims. Prior to the dismissal of the Breach of Duty of Loyalty claim, Plaintiff attempted to use these same common core facts to prove that the Salesmen Defendants had a duty of loyalty to Plaintiff, but breached that duty when they left Plaintiff for Defendant Ambyth and misappropriated trade secrets in the process. *See, e.g.*, Dkt. No. 158 (Second Amended Complaint) ¶ 147.Therefore, the Court finds that the successful and unsuccessful claims are deeply intertwined because in order to prosecute them, Plaintiff relied on common core facts and, as a result, no reasonable segregation could have been made. *See, e.g.*, *Innovative Sols. Int'l, Inc.*

*v. Houlihan Trading Co., Inc.*, No. C22-296, 2025 WL 949579, at *2–3 (W.D. Wash. Mar. 27, 2025) (finding that the court need not segregate time associated with negligence and negligent misrepresentation claims from time associated with CPA claim, because both claims relied on the same set of facts); *Mooney v. Roller Bearing Co. of America, Inc.*, No. C20-1030, 2023 WL 6979645, at *5 (W.D. Wash. Oct. 23, 2023) (declining to deduct hours where plaintiff did not separate successful claims from unsuccessful claims in fee request, in part because those claims were based on "common core facts" and, therefore, could not reasonably be segregated).

(b) Kim Stephens's and Other Partners' Billed Hours

Defendants argue that "Time Claimed for Kim Stephens and Disproportionate Partners' Time should not be awarded." Dkt. No. 345 at 15. Defendants point to Stephens's high hourly rate ($900–$1025 per hour), minimal role in this case, and "sparse" time records, asserting that this indicates that his work could have been completed by associates or, at the very least, Partner Jason Dennett, who has a similar amount of experience and an hourly rate of $800. *See id.* Defendants' arguments are unavailing. The fact that Defendants point out that Stephens did minimal work supports Plaintiff's argument that his high hourly rate was used sparingly, and that he was only utilized when needed to impart his unique skills and wisdom in this case that "[n]o one else on [Plaintiff]'s team had." Dkt. No. 354 at 7. In assessing whether a fee is reasonable, "the court may consider the level of skill required by the litigation," *Bowers v. Transam. Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983). Because Plaintiff used Stephens sparingly, and mostly to glean his thoughts on litigation strategy in areas where no one else could impart such knowledge, the Court finds such billing is reasonable.

Defendants also argue that partners at Plaintiff's counsel's firm did 64% of the work, and that "[s]uch an imbalance leads to an overstatement of fees and costs and forecloses an award of

fees[.]" Dkt. No. 345 at 15. This percentage is misleading and ignores several key facts. First, associate attorney Joan Pradhan billed the second-most hours in this case. *See* Dkt. No. 325 ¶ 4. Her rate is less than half of Stephens's rate and nearly half the rate of Dennett—this is evidence of high usage from an associate with much lower billing rates. *See id.* Second, although Kaleigh Boyd is a partner at the firm, her rate is also less than half of Stephens's rate, significantly lower than Dennett's rate, and is lower than the rates of partners Cecily Jordan and Rebecca Solomon. *See id*. Simply because Boyd is labeled as a partner does not mean that Plaintiff is overstating fees. Third, Boyd billed by far the most hours in this case (*see* Dkt. No. 325 ¶ 4), which plays a large factor in Defendants' 64% number—but she was lead counsel in this matter. Therefore, the high amount of hours she expended on this matter is understandable. Finally, Defendants do not point to any specific tasks that should have been completed by associates instead of partners. Therefore, the Court declines to reduce Plaintiff's fee award based on the reasons Defendants have argued here.

(c) Block Billing

"Block billing is the time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Met. Life Ins. Co.,* 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation modified). "The documentation [of time entries] 'need not be exhaustive or in minute detail, but must inform the court . . . of the type of work performed . . . .'" *MKB Constructors v. Am. Zurich Ins. Co.*, 83 F. Supp. 3d 1078, 1087 (W.D. Wash. 2015) (quoting *Bowers*, 100 Wn.2d at 597). District courts have the "authority to reduce hours that are billed in block format." *Welch*, 480 F.3d at 948; *see, e.g., MKB Constructors*, 83 F. Supp. 3d at 1087–88 (reducing fees by 20% for "significant" number of block billing entries).

Defendants argue that Plaintiff uses a "block billing" method, and that such time entries are "terse and do not allocate time to specific subjects." Dkt. No. 345 at 16. In making this assertion, Defendants refer generally to Plaintiff's time entries and claim that such block billing accounts for "over $200,000 in fees." *Id*. In reviewing the entirety of Plaintiff's time entries, including those highlighted by Defendants (Dkt. No. 347-6 (sealed)),[2] it is evident that throughout the time logs, the majority of entries describe one task or time allocated to individual tasks, including nearly all of Kaleigh Boyd's entries. *See generally id*. Plaintiff's attorneys and paralegals do occasionally engage in block billing time entries. However, the Court finds that many of the tasks that were grouped together were related in some way, and the number of truly "block-billed" entries for completely unrelated tasks were occasional. The Court has the authority to reduce a fee for block billing, but it declines to do so under the circumstances here. As Plaintiff asserts, Defendants' argument is "one of form over substance," (Dkt. No. 354 at 8) as the rates are almost entirely reasonable and the vast majority of Plaintiff's time entries that include multiple tasks also include task-specific time allocation or are related tasks.

* * *

Having reviewed the time records and conducted the above analysis, the Court cannot find any more unreasonable fees. Therefore, after reducing $3,288 for fees related to paralegal billing, and $11,123 related to the filing of documents by non-legal assistants, the Court finds the remaining amount of work— accounting for a fee of $1,247,634.50—is reasonable.

(3) <u>The *Kerr* Factors</u>

Having determined the lodestar amount, "the [C]ourt must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already

[2] The Lange Declaration reversed the citations to the exhibits for block billing examples and the entries for Kim Stephens. Dkt. No. 347 ¶¶ 8, 9. The exhibit for block billing is Exhibit F, or Docket Number 347-6.

subsumed in the initial lodestar calculation." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)). "A 'strong presumption' exists that the lodestar figure represents a 'reasonable fee,' and therefore, it should only be enhanced or reduced in 'rare and exceptional cases.'" *Id.* at 1119 n.4 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d at 364 n.9 (citation modified).

Here, "[t]he Court sees no reason to adjust this figure on the basis of the non-subsumed *Kerr* factors, nor does Plaintiff request such an adjustment." *Waste Action Project v. Astro Auto Wrecking, LLC*, No. C15-796, 2016 WL 11621975, at *1 (W.D. Wash. June 30, 2016); *see Snell v. N. Thurston Sch. Dist.*, No. C13-5488, 2014 WL 2154488, at *2 (W.D. Wash. May 22, 2014) ("The fees and costs sought are reasonable under the relevant authorities, and there is no compelling reason to reduce them."). Therefore, the Court finds that after the reductions mentioned above, $1,247,634.50 is reasonable, and the Court will award that amount.

**b. *Costs***

When a finding of willful and malicious is made, a court can award costs for a violation of the WUTSA, as outlined in RCW 4.84.010. *See Boeing Co.*, 108 Wn.2d at 66. Additionally, 28 U.S.C § 1920 provides recoverable costs for prevailing parties in federal claims. Under both statutes, costs can be awarded for, among other things, filing fees, service fees, obtaining reports and records.

Plaintiff provides a detailed log of the costs incurred in this matter, which include costs for transactions that are allowable under both statutes. *See generally* Dkt. No. 325-2 (Cost Transaction File). Defendants' only argument against Plaintiff's cost request is that costs for transcripts can only be awarded if a showing was made that the transcripts were needed for (referring to federal law) or used at trial (referring to state law), and that Plaintiff has made no showing that transcripts were needed for trial. *See* Dkt. No. 345 at 16. But the applicable federal statute allows for collection of fees related to the creation of transcripts for "use in the case" and says nothing about limiting reimbursement for them only if needed for trial. *See* 28 U.S.C § 1920(2). In any event, asserting that Plaintiff hasn't made a showing in the instant motion that it needed deposition transcripts at trial ignores the fact that the Court was present for trial and witnessed Plaintiff use deposition transcripts. *See, e.g.,* Dkt. No. 344-1 (K. Holmes Trial Testimony (Dec. 2, 2025)) at 8 (17:1–21) (counsel refreshing Holmes's recollection with deposition transcript). Given that Defendants' only objection to the cost allocation is the billing of transcript creation, and that the costs on Plaintiff's cost transaction file reflect allowable costs under state and federal law, the Court finds that Plaintiff has made a showing that the costs it requests are reasonable.

Therefore, the Court awards Plaintiff $42,022.78 in costs.

**B. Exemplary Damages**

Exemplary damages are synonymous with punitive damages. *Hill v. Garda CL Northwest Inc.*, 191 Wn.2d 553, 573, 424 P.3d (2018). ""[P]unitive damages are aimed at deterrence and retribution." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972 (9th Cir. 2021), *abrogated on other grounds by Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026) (quoting *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005)).

Exemplary damages are generally not recoverable under Washington law unless expressly authorized by statute. *See Erickson v. Pharmacia LLC,* 5 Wn.3d 585, 613, 578 P.3d 306 (2025);[3] *see also Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 882, 289 P.2d 975 (1955); *Anderson v. Dalton*, 40 Wn.2d 894, 898, 246 P.2d 853 (1952). Here, the WUTSA authorizes them: "[i]f wil[l]ful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (1)." RCW 19.108.030. Additionally, under the DTSA, "if the trade secret is willfully and maliciously misappropriated, [the court may] award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B)." 18 U.S.C. § 1836(b)(3)(C).

**1. Exemplary Damages Legal Standard**

Defendants provide the *Hardeman* factors for evaluating exemplary damages. *See* Dkt. No. 345 at 7. In Plaintiff's reply, Plaintiff does not object to Defendants' use of the *Hardeman* factor analysis and does not provide any other analysis for the Court to use in determining a proper exemplary damages award. *See generally* Dkt. No. 354. Therefore, the Court will measure whether punitive damages are grossly excessive by the three *Hardeman* factors:[4]

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

---

[3] *Erickson* references punitive damages as not being recoverable unless expressly authorized by statute. *See* 5 Wn. 3d at 613. Washington law has found punitive damages to be synonymous with exemplary damages. *See Hill*, 191 Wn.2d at 573.

[4] Neither RCW 19.108.030, nor 18 U.S.C. § 1836(b)(3)(C) provides factors to consider when awarding exemplary damages. Plaintiff does not cite to any factors for the Court to utilize. Given that: (1) exemplary damages are considered synonymous with punitive damages, *see Hill*, 191 Wn.2d at 573; and (2) Defendants have provided a three-factor test to determine exemplary damages in this case—a test to which Plaintiff has not objected—the Court will utilize the factors laid out in *Hardeman*, 997 F.3d at 972.

*Hardeman*, 997 F.3d at 972 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *see also Tapia v. NaphCare Inc.*, No. C22-1141, 2025 WL 2256684, at *23 (W.D. Wash. Aug 7, 2025) (utilizing *Hardeman* factors); *Goldstine v. FedEx Freight Inc.*, No. C18-1164, 2021 WL 952354, at *9 (W.D. Wash. Mar. 11, 2021) (same)). The weightiest factor is "the degree of reprehensibility of the defendant's conduct." *Hardeman*, 997 F.3d at 972. (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). An award of exemplary damages is under the Court's discretion. *Boeing Co.*, 108 Wn.2d at 61–62.

**2. Request for Exemplary Damages**

Plaintiff requests that the Court award exemplary damages of double the amount of the actual damages award. Dkt. No. 324 at 11.

***a. Degree of Reprehensibility of Defendants' Misconduct***

Defendants argue that the trial evidence does not support a finding of reprehensibility. Dkt. No. 345 at 6. To determine the degree of the reprehensibility of Defendants' conduct, the Court analyzes whether:

> (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Hardeman*, 997 F.3d at 972–73 (citation modified). Reprehensibility is evaluated on "a scale, with 'acts and threats of violence at the top, followed by acts taken in reckless disregard for others' health and safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence.'" *Hunter v. Durell*, No. C16-1445, 2018 WL 6249789, at *13 (W.D. Wash. Nov. 29, 2018) (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001)).

(1) Type of Harm Caused

First, it is undisputable that the harm caused was not physical, but rather purely economic. Therefore, this factor weighs in Defendants' favor.

(2) Reckless Disregard for Health and Safety

Second, there is no indication that Defendants' actions evinced "an indifference to or a reckless disregard of the health or safety of others." There was no evidence that the Salesmen Defendants' leaving the company put the health or safety of anyone at risk, and Plaintiff does not provide any arguments to say otherwise. Therefore, this factor weighs in Defendants' favor.

(3) Financial Vulnerability

Third, there is not enough evidence to support a finding that Plaintiff—the target of the conduct—was financially vulnerable. The evidence at trial established that Plaintiff is not a large company and that, when the Salesmen Defendants left, there were only two additional salesmen working for Plaintiff, forcing Sam King to join the remaining salesmen and take on a larger-than-typical sales role. At the time of the departure of the Salesmen Defendants, their departure also caused great strife and uncertainty within the company. However the evidence at trial also established the following: (1) Plaintiff was a financially successful company prior to the departure of the Salesmen Defendants; (2) Plaintiff was historically a more financially successful company than Defendant Ambyth; (3) although working without the Salesman Defendants was much more difficult, Plaintiff did continue to make profits, albeit not at the same scale; (4) after the Salesmen Defendants left Plaintiff, Plaintiff continued to do business with some of the companies that also began doing business with Defendant Ambyth (*See* Dkt. No. 347-1 (S. King Trial Transcript Dec. 8, 2025) at 4 (127:6–10)); and (5) both Plaintiff and Defendant Ambyth were small companies within the same industry, so this was not a situation of a larger corporation taking advantage of a smaller one, *see Hardeman*, 997 F.3d at 973 (distinguishing

between circumstances where the tortfeasor and victim are a large corporation and an individual, from circumstances involving "two corporations on equal footing," in the context of evaluating the financial-vulnerability factor). All this evidence together shows that while Plaintiff clearly suffered significant difficulties as a result of Defendants' actions, Plaintiff was not financially vulnerable.

The indicia of financial vulnerability are typically more dire than Plaintiff's circumstances.. *See, e.g., Planned Parenthood*, 422 F.3d at 958–59 (finding that plaintiffs were financially vulnerable where they faced loss of livelihood when defendant "intentionally tried to scare [plaintiffs] into quitting" through true threats of physical violence); *Minden v. Allstate Property and Casualty Ins. Co.*, No. C21-151, 2025 WL 2528624, at *9 (D. Nev. Sept. 3, 2025) (finding plaintiffs were not financially vulnerable where they "operated a successful business" and "lived a comfortable lifestyle," and that financial vulnerability "is of a greater degree or severity, to an extent that fundamentally undermines or challenges an individual's quality of life") (citing *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp. 2d 1168, 1186-87 (D. Nev. 2008) (noting disability, illness, familial obligations, complete loss of home, welfare status, and bankruptcy status as examples of financial vulnerability)). Therefore, this factor weighs in Defendants' favor.

(4) <u>Repeated Conduct</u>

Fourth, Defendants' conduct involved repeated actions, as its misappropriation involved several former customers of Plaintiff or repeated use of the misappropriated information, not simply a one-off encounter with one customer. *See* Dkt. No. 344-6 (R. Morgan Trial Testimony Dec. 10, 2025) at 3 (19:8–24). Therefore, this factor weighs in Plaintiff's favor.

//

//

(5) The Harm Was the Result of Malice

Fifth, although Defendants still maintain that they were simply "competing" in the business, the jury decided otherwise and concluded that Defendants acted with malice. Dkt. No. 316 at 3. Therefore, this factor weighs in favor of Plaintiff.

* * *

On balance, the Court finds that two of these factors weigh in Plaintiff's favor and three weigh in Defendants' favor, thereby not making Defendant's actions sufficiently reprehensible to warrant an award of exemplary damages.[5]

**b. *Exemplary Damages and Deterrence***

In addition to finding that Defendants' conduct was not so reprehensible as to justify the award Plaintiff requests, the Court also emphasizes that exemplary damages are "aimed at deterrence and retribution," *Hardeman*, 997 F.3d at 953, and that courts should "go no further if a more modest punishment for the reprehensible conduct" could satisfy punishment and deterrence, *id.* at 972 (quotation modified). In the instant matter, the jury awarded $1,916,137 in damages for Plaintiff's lost profits. Dkt. No. 316 at 6. Plaintiff argues that "[t]he damages award was . . . only a portion of Silver Fern's lost profits, with more than three-quarters consumed by

[5] Even if the Court found Defendants' actions to be sufficiently reprehensible, it would not award exemplary damages for three reasons. First, Defendant's conduct was unquestionably not near the top of the "scale" of reprehensible conduct (acts and threats of violence at the top, followed by acts taken in reckless disregard for others' health and safety), yet Plaintiff seeks the highest possible award under Washington law. Second, courts typically apply a ratio standard—comparing the jury's award of exemplary damages to the award of compensatory damages and in consideration of circumstances presented in similar cases—to evaluate and determine a proper exemplary damages award. *See, e.g.*, *Planned Parenthood*, 422 F.3d at 954–57 (evaluating ratio between punitive and compensatory awards). Here, however, such a comparison cannot be done, as the jury did not make a determination regarding punitive or compensatory damages. Third, although Plaintiff requests exemplary damages of double the amount of actual damages, Plaintiff gives the Court no guidance as to how to calculate an award of exemplary damages, other than to say that Washington law allows the Court to double the jury award for actual loss. *See* Dkt. No. 324 at 11–12. This leaves the Court without a methodical way to calculate an alternative exemplary damages award. Without guideposts, the Court risks awarding an arbitrary dollar amount, and the Court will not participate in such an exercise. Further, the Court ultimately would find the conduct was not so reprehensible as to justify Plaintiff's request for the maximum exemplary award. *See infra* Section II.B.2.b.

the attorneys' fees and costs Silver Fern expended in getting the award." Dkt. No. 354 at 3. But the Court is now separately awarding $1,247,634.50 in attorney fees and $42,022.78 in costs. *See supra* II.A. That means that four individual people and one small company are on the hook for paying $3,205,794.28 (plus interest). The evidence did not show that any of the Defendants are so wealthy that $3,205,794.28 would not be a large and very significant fiscal hit. For example, Defendants Holmes and Lyons had to borrow against their homes to post a cash bond. *See* Dkt. No. 333 (Morgan Bond Decl.). For Defendants such as these four, such a large amount is undoubtedly sufficient to satisfy the objectives of punishment and deterrence. Given their financial circumstances, it would be illogical to assume that the Defendants will engage in the same conduct again, knowing that such conduct can result in a combined judgment and jury award of several million dollars. As such, the Court exercises its discretionary power to find that any order for exemplary damages is not necessary. Therefore, the Court denies Plaintiff's request for exemplary damages.

## III. CONCLUSION

Accordingly, Plaintiff's Motion for Attorney Fees, Costs, and Exemplary Damages (Dkt. No. 324) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Defendants are ORDERED to pay Plaintiff $1,247,634.50 in attorney fees.

(2) Defendants are ORDERED to pay Plaintiff $42,022.78 in costs.

(3) The Court DENIES Plaintiff's request for exemplary damages.

Dated this 1st day of October, 2026.

Tana Lin
United States District Judge